UNITED STATES of America

v.

G. Gordon LIDDY, Appellant.

No. 74–1885.

United States Court of Appeals,
District of Columbia Circuit.

Argued June 18, 1975.

Decided May 17, 1976.

Peter L. Maroulis, Poughkeepsie, N. Y., for appellant.

Philip B. Heyman, Sp. Asst. to the Sp. Prosecutor, Washington, D. C., with whom Henry S. Ruth, Jr., Sp. Prosecutor, Peter M. Kreindler, Counsel to the Sp. Prosecutor, Maureen E. Gevlin and Richard D. Weinberg, Asst. Sp. Prosecutors, Washington, D. C., were on the brief for appellee. Leon Jaworski, Sp. Prosecutor, Washington, D. C., at the time the record was filed entered an appearance as Sp. Prosecutor.

Ivan Michael Schaeffer, Atty., Dept. of Justice, Washington, D. C., for United States, amicus curiae.

Before LEVENTHAL and WILKEY, Circuit Judges and MERHIGE,* United States District Judge for the Eastern District of Virginia.

Opinion for the Court filed by District Judge MERHIGE.

MERHIGE, District Judge:

On July 12, 1974, a jury convened in the United States District Court for the District of Columbia and convicted the Appellant, George Gordon Liddy, of conspiring with co-defendants John D. Ehrlichman, Bernard Barker, and Eugenio Martinez to violate the Fourth Amendment rights of Doctor Lewis J. Fielding in contravention of Title 18, United States Code, Section 241.[1] Sen-

---

* Sitting by designation pursuant to 28 U.S.C. § 292(d).

1. If two or more persons conspire to injure, oppress, threaten, or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; . . . They shall be fined not more than $10,000 or imprisoned not more than ten years, or both. 18 U.S.C. § 241.

tence was imposed on the Appellant on July 31, 1974, by District Judge Gerhard A. Gesell for a term of from one to three years,[2] to run concurrently with the sentence he received in *United States v. Liddy*, CR. No: 1827–72 (D.D.C.). The appellant seeks reversal of his conviction on the grounds that his indictment was constitutionally defective, that his right to a speedy trial under the Sixth Amendment and his right to due process under the Fifth Amendment were violated by the dismissal, over his objection, of a California prosecution arising from his participation in the break-in of Dr. Fielding's office, and that his constitutional and statutory rights were violated by the refusal of the trial court to enforce two *subpoenae duces tecum*. For the reasons delineated below, we reject these contentions and affirm the Appellant's conviction.

The basic facts of the case are well known, set out in some detail in the companion cases, and are partially reiterated and supplemented herein primarily for the purpose of specificity as to Appellant Liddy's involvement in the illegal conduct engaged in by the principals. On September 3, 1971, Bernard Barker, Eugenio Martinez, and Felipe de Diego, unlawfully entered the office of Doctor Lewis J. Fielding, a Beverly Hills, California, psychiatrist, and rummaged through his files in an unsuccessful effort to examine and photograph the confidential medical records of a former patient, Doctor Daniel Ellsberg. Doctor Ellsberg was largely responsible for the publication in the *New York Times* of several government documents concerning this country's war effort in South Vietnam ("Pentagon Papers").[3] The break-in was intended to provide material for Dr. Ellsberg's prosecution[4] and to generally discredit his motives for releasing the documents.[5]

The Appellant, George Gordon Liddy, employed by the White House, was one of the principal organizers of the scheme. Mr. Liddy was hired by Egil Krogh, a presidential aide, for what has been described as the "Room 16" unit with the approval of John D. Ehrlichman to investigate leaks of classified information.[6] Doctor Ellsberg was the unit's primary target. After Doctor Fielding refused to confer with Federal Bureau of Investigation agents about Doctor Ellsberg's psychiatric history, the unit recommended that a surreptitious entry be undertaken to gain access to Doctor Fielding's files. Mr. Ehrlichman approved the entry, and the proposal was put into effect.[7] The Appellant did not dispute during the trial his participation in the plan to enter and search Doctor Fielding's office.[8] The evidence produced at trial indicates that not only was he actively involved in the planning process of the break-in, but that on August 25, 1971, he gained entry to Doctor Fielding's office by misrepresenting his identity to a charwoman for the purpose of

2. Mr. Ehrlichman was sentenced to serve from twenty months to five years imprisonment on each of Counts One, Three and Four, the sentences to run concurrently. Messrs. Barker and Martinez received suspended sentences and were placed on probation for three years. The district court expressly noted, in imposing the sentences, that it was taking into account the varying degrees of culpability of the defendants.

3. *See New York Times Co. v. United States*, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971).

4. Doctor Ellsberg was indicted in California on charges stemming from the release of the Pentagon Papers. The charges were ultimately dismissed by the California Court.

5. The evidence adduced at trial indicates that the conspirators sought, in this manner, to destroy Doctor Ellsberg's public image and credi-bility by leaking his psychiatric history to the press.

6. Egil Krogh was one of the "Unit's" organizers and directors. Mr. Ehrlichman informed him of his assignment—Krogh was an assistant to defendant Ehrlichman—and was told that he was to report its progress and activities to him.

7. Mr. Ehrlichman argued at trial that he, in fact, did not authorize such an entry. The jury apparently disagreed, as he was convicted on Count One as a conspirator.

8. The Appellant called no witnesses on his own behalf at trial, nor did he take the stand. His lawyer, in his argument to the jury, conceded the Appellant's participation in the plan to illegally enter the office of Doctor Fielding, and raised a mistake of fact defense.

taking reconnaissance photographs. Additionally, he purchased supplies for the operation, and maintained a look-out position in the vicinity of Doctor Fielding's office during the actual unauthorized entry.

On September 4, 1973, Mr. Liddy was indicted by the State of California and charged with violating California law for his participation in the break-in. Approximately five months later, on March 11, 1974, at the request of Mr. Leon Jaworski, Special Prosecutor of the Watergate Special Prosecution Force, and over the objection of the defendant Liddy, the California prosecution was dismissed. On March 7, 1974, Appellant Liddy had been indicted by a federal grand jury charging him with the offense of which he now stands convicted. Trial on this charge, presided over by Judge Gesell, commenced before a jury on June 26, 1974. By pretrial motion to dismiss in the trial court, the Appellant argued that his Sixth Amendment right to a speedy trial and his Fifth Amendment right to due process had been violated by collusive action between the California State Prosecutor and the Watergate Special Prosecution Force. The trial judge denied the motion by Memorandum Order on May 21, 1974, and the Appellant claims error in that regard. Appellant does not suggest that the period of less than three months between his indictment and trial in this case violated the constitutional requirements and speedy trial standards set out by the Supreme Court. *E. g., Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). Rather, he argues that the California prosecution and the federal prosecution are coterminous because both prosecutions were directed by the federal authorities, and accordingly, that the extended period of time between his California indictment and his trial in federal court violated his Sixth Amendment right to a speedy trial. Furthermore, the Appellant protests that the loss of the California forum deprived him of the benefit of the California Rules of Evidence that require the corroboration of accomplice testimony, a rule not present in federal law.

■ Mr. Liddy's contention is premised upon the proposition that the California prosecution was a "sham and a cover for a federal prosecution." *Bartkus v. Illinois,* 359 U.S. 121, 124, 79 S.Ct. 676, 678, 3 L.Ed.2d 684 (1959). Successive prosecution in state and federal courts have long been held constitutionally permissible. *E. g., Abbate v. United States,* 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959); *United States v. Lanza,* 260 U.S. 377, 43 S.Ct. 141, 67 L.Ed. 314 (1922). In *Bartkus,* the Supreme Court alluded to the fact that a state prosecution subsequent to an unsuccessful federal prosecution may, under appropriate circumstances, be held to violate the Double Jeopardy Clause of the Fifth Amendment, if the state prosecution is, "merely a tool of the federal authorities." *Bartkus v. Illinois,* supra, 359 U.S. 121, 123, 79 S.Ct. 676, 678 (1959). *Bartkus,* as we view it, stands for the proposition that federal authorities are proscribed from manipulating state processes to accomplish that which they cannot constitutionally do themselves. To hold otherwise would, of course, result in a mockery of the dual sovereignty concept that underlies our system of criminal justice. *See Abbate v. United States, supra,* 359 U.S. 187, 194–95, 79 S.Ct. 666 (1959). As Appellant correctly urges, federal authorities cannot be allowed to circumvent the speedy trial requirements of the Sixth Amendment by manipulating the state criminal processes before the initiation of federal prosecutorial proceedings. The burden, however, of establishing that federal officials are controlling or manipulating the state processes is substantial; the Appellant must demonstrate that the state officials had little or no independent volition in the state proceedings.

■ As held by Judge Gesell, the evidence presented does not sustain such a proposition. Prior to the linking of the White House to the illegal entry, the Federal Government had decided to defer to the state criminal processes of California for any criminal action brought against the Appellant. The evidence does not support the contention that the California prosecution was begun at the *direction* of the Justice

Department or the Special Watergate Prosecution Force. When White House supervision of the entry was discovered, the Special Prosecutor appropriately changed his position and sought to bring the Appellant and his alleged co-conspirators to trial in federal court. Federal indictments were properly procured, and Special Prosecutor Jaworski, concerned with the problems inherent in parallel prosecutions, recommended that the state officials move to dismiss the California prosecution. His recommendation was heeded; the California District Attorney moved to dismiss the California action, and the presiding state judge granted the motion. The federal case against the Appellant then proceeded without further hinderance. Cooperation between state and federal law enforcement officials can hardly be faulted on a case of the public importance, enormity and complexity of the instant one. The evidence was devoid of any indication that California state officials were "tools" of the Special Prosecutor and, accordingly, we reject the contention that the California prosecution was conterminous with the federal prosecution.

The Appellant also moved pretrial to dismiss the indictment on the ground that he was charged with a violation of an inapplicable statute, and later asserted, in the alternative, that he had the right to be charged with an applicable lesser included offense. Judge Gesell denied the pretrial motion by Memorandum Order of May 21, 1974, and when instructing the jury, refused a lesser included offense charge; of this, the Appellant complains.

Count one of the indictment, on which the Appellant was convicted by the jury,

alleges that at all times material to the prosecution Mr. Liddy was "acting in the capacity of an officer and employee of the United States Government, as Staff Assistant to the President of the United States," and that Mr. Liddy participated in a conspiracy designed to "injure, oppress, threaten and intimidate Doctor Lewis J. Fielding in the free exercise and enjoyment of rights and privileges secured to him by the Constitution and laws of the United States, in violation of Title 18, United States Code, Section 241(a)." [9] The indictment alleges that the particular right infringed was granted to Doctor Fielding by the Fourth Amendment's prohibition against unreasonable searches and seizures.[10]

■ The Appellant first contends that Section 241(a) is inapplicable to his offense. He asserts that in order to be injured, threatened or intimidated with the meaning of the Section the victim must be aware, at the time it occurs, of the injury, threat or intimidation. Furthermore, since the indictment alleges that a Fourth Amendment right has been violated, he asserts that the victim, to be aware of the injury, must be aware, at the time it occurs, of the government's participation in the illegal search.[11] Since the break-in was covert, concealing the fact that government agents perpetrated the entry,[12] it is argued that Doctor Fielding was initially ignorant of the governments' involvement and, accordingly, that Section 241(a) is inapplicable to the Appellant's actions. While a majority of the cases brought under the Section do involve direct threats and/or injury,[13] neither the language of the statute nor its history nor its subsequent interpretation support

9. Indictment, Count One, Section 3, No. 74–116 (D.D.C.).

10. Indictment, Count One, Section 5, No. 74–116 (D.D.C.).

11. The Appellant, incorrectly, suggests support for this position in the fact that the Fourth Amendment applies only to restrict action by the government or its agents. Cf. Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921).

12. Messrs. Barker, Martinez and de Diego had strewn pills and papers about the office in an effort to make the entry appear to be the work of persons searching for drugs.

13. E. g., United States v. Price, 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966); United States v. Guest, 383 U.S. 745, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966); United States v. Pacelli, 491 F.2d 1108 (2d Cir. 1974).

the proposition that the statute is so limited.

Indeed, there is precedent to the contrary. In a line of cases the Supreme Court has consistently held that tampering with ballot boxes in federal elections by casting false votes or improperly tabulating votes is punishable under Section 241. Those conspiring to fraudulently alter the vote count are held to injure the interests of the honest voters who have a right under the Constitution to have their votes fairly counted. E. g., *Anderson v. United States*, 417 U.S. 211, 94 S.Ct. 2253, 41 L.Ed.2d 20 (1974); *United States v. Saylor*, 322 U.S. 385, 64 S.Ct. 1101, 88 L.Ed. 1341 (1944); *United States v. Classic*, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941). Section 241 was applied in these cases even though they typically involve an injury to innocent voters who had no knowledge of the secretive tampering at the time it occurred; only after the fraud was discovered did the injured persons become cognizant of the violation of their rights. Similarly, Doctor Fielding's initial ignorance of the involvement of federal officials in the September 3, 1971, break-in will not, by itself, defeat the application of Section 241 to the Appellant's activities.

The appellant argues, second, that even if Section 241 is applicable to his case, he was entitled to a charge under Title 18, United States Code, Section 2236,[14] either in lieu of a Section 241 charge or as a lesser included offense.[15] It is alleged that Section 241 and Section 2236, in conjunction with Title 18, United States Code, Section 371,[16] award disparate punishment for precisely the same offense, permitting the prosecuting attorney to exercise unbridled discretion in choosing a charge for a particular defendant. Accordingly, it is asserted that Section 241 is unconstitutionally vague and could lead to violations of the equal protection concept contained in the Fifth Amendment.[17] At the very least, it is argued, the fact that the elements of the Appellant's offense under Section 241 are necessarily inclusive of the elements of proof needed to establish an offense under Section 371 and 2236 entitle the Appellant to a jury instruction charging those sections as a lesser included offense. Judge Gesell by a Memorandum Order of May 21, 1974, correctly, in our view, denied the Appellant's motion to dismiss the indictment on the contended grounds of an improper charge, and orally denied the Appellant's request for a lesser included offense jury charge.

14. Whoever, being an officer, agent, or employee of the United States or any department or agency thereof, engaged in the enforcement of any law of the United States, searches any private dwelling used and occupied as such dwelling without a warrant directing such search, or maliciously and without reasonable cause searches any other building or property without a search warrant, shall be fined for a first offense not more than $1,000; and, for a subsequent offense, shall be fined not more than $1,000 or imprisoned not more than one year, or both.

This section shall not apply to any person—
(a) serving a warrant of arrest; or
(b) arresting or attempting to arrest a person committing or attempting to commit an offense in his presence, or who has committed or is suspected on reasonable grounds of having committed a felony; or
(c) making a search at the request of invitation or with the consent of the occupant of the premises
18 U.S.C. § 2236

15. Fed. R. Crim. P. 31(c).

16. If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor.
18 U.S.C. § 371

17. Although the Fifth Amendment does not contain an Equal Protection Clause, it has been held that its Due Process Clause provides the same basic safeguards and principles as the Equal Protection Clause of the Fourteenth Amendment. *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); *Schneider v. Rusk*, 377 U.S. 163, 84 S.Ct. 1187, 12 L.Ed.2d 218 (1964); *Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

■ Assuming that the Appellant is subject to prosecution under both Section 241 and Section 371 for conspiracy to violate Section 2236, he does not have the constitutional right to demand prosecution exclusively under the statue prescribing the lesser penalties. The Special Prosecutor had the authority to proceed under the provision of his choice. *United States v. Shepard,* 169 U.S.App.D.C. 353, 515 F.2d 1324, 1332 (1975); *Newman v. United States,* 127 U.S. App.D.C. 263, 382 F.2d 479, 481 n.6 (1967); *Hutcherson v. United States,* 120 U.S.App. D.C. 274, 345 F.2d 964, 967 n.3 (1965). Appellant's position is out of phase with *United States v. Moore,* 423 U.S. 122, 96 S.Ct. 335, 46 L.Ed.2d 333, 44 L.W. 4023 (1975), where the Supreme Court upheld prosecution for a felony under the Controlled Substances Act even though it assumed defendant could have been charged for a misdemeanor under another provision. Furthermore, Mr. Justice Black's dissent to the contrary in *Berra v. United States,* 351 U.S. 131, 135, 76 S.Ct. 685, 100 L.Ed. 1013 (1955), heavily relied on by the Appellant, expressly excludes cases in which different elements of proof are required for each offense in controversy.[18] As noted below, this is such a case.

■ The Appellant's position that he was entitled to a lesser included offense charge under Sections 371 and 2236 is premised on the supposition that the elements of proof for a charge under Section 241 are inclusive of the elements of proof for a charge under Section 371 and 2236. *See, e. g., Sansone v. United States,* 380 U.S. 343, 349–50, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1964); Fed.R.Crim.P. 31(c). The language of the relevant statutes, however, clearly indicates that such a supposition is false; a prosecution under Section 371 for conspiracy to violate Section 2236 would require the proof of different elements than a prosecution under Section 241. For example, Section 241 only requires proof of a conspiracy to violate a federally protected right, while Section 371 in conjunction with 2236 requires proof that the defendant was engaged in the "enforcement of law," and that he acted "maliciously" in unlawfully searching the office building, while Section 241 is silent on both elements.

Finally, the Appellant argues that he was deprived of his rights under the Jencks Act, Title 18, United States Code, Section 3500, *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and the Fifth and Sixth Amendments because of the district court's failure to enforce subponeas directed at the House of Representatives seeking transcripts of the executive session testimony of Robert E. Cushman, E. Howard Hunt, Charles W. Colson, and John D. Ehrlichman before the Subcommittee on Intelligence of the Committee on Armed Services of the House of Representatives.[19] The record reveals that the district court received a letter from Lucien N. Nedzi, Chairman of the Special Subcommittee stating that the material sought was, in his words, "executive session material."

We need not, however, indulge in any discussion as to whether Congressman Nedzi's response constituted a claim of privilege under the Secrecy Clause, U.S.Const. Art. 1, Sec. 5, Cl. 3 and under the Speech or Debate Clause, U.S. Const. Art. I, Sec. 6, or under the House Rules which prohibit production of executive session testimony except upon affirmative vote of the Committee or the House. *See* House Resolution 12, 93rd

---

18. Justice Black cites with approval language from *United States v. Beacon Brass Co.,* 344 U.S. 43, 45, 73 S.Ct. 77, 78, 97 L.Ed. 61 (1952):

"We have before us two statutes, each of which proscribes conduct not covered by the other, but which overlap in a narrow area illustrated by the instant case. At least where different proof is required for each offense, a single act or transaction may violate more than one criminal statute . . . ."

19. Messrs. Ehrlichman, Hunt, Colson and Cushman each testified at trial. As soon as the Appellant became aware of the missing transcript, he moved to strike the testimony of the witness then on the stand, Mr. Hunt. Judge Gesell denied the motion to strike by Memorandum Order of July 3, 1974. In the order, Judge Gesell concluded that "further proceeding to enforce the subpoenas would be futile," and reiterated a willingness to undertake a review of the material *in camera.*

Cong., 1st Sess., 119 Cong.Rec. H. 30–31. The spector of an academic discussion giving rise to a possible future conflict between co-equal branches of the government is both unappealing and inappropriate under the existing circumstances as outlined in our succeeding paragraphs, which is equally applicable to Appellant's contentions reference Jencks and/or *Brady* material.

■ As Judge Wilkey has pointed out in the Court's opinion in *United States v. Ehrlichman*, the Special Prosecutor asserts that he produced all relevant documents in his possession and, additionally, requested a search by all governmental departments for materials relevant to the trial issues; the response was negative as to any exculpatory material. The requirement of producing Jencks material is to afford a defendant the benefit of a witness' prior statements to facilitate the search for truth, and contemporaneously aid, without our adversary system, a defendant in the defense of the charge for which he is before the Court. The premise of *Brady v. Maryland, supra,* is of similar purport. Here, Appellant has not advanced any reasons—specific, general, or speculative—that the transcripts of the testimony he sought would have aided his defense.

The transcript materials previously sought by Appellant have since been released, filed with this Court, and an examination of same cannot lead any reasonable reader to the conclusion that they contain statements exculpatory to Mr. Liddy. These transcripts were available prior to argument before this Court; yet there was no contention that the material was either exculpatory or could have materially aided counsel in cross-examination of the witnesses. Indeed, at trial no effort on behalf of Mr. Liddy by way of cross-examination was exerted to weaken the credibility of Messrs. Ehrlichman, Hunt, Colson or Cushman. The decision not to cross-examine these witnesses could not reasonably have been related to the inaccessibility of the sought materials, for the sworn testimony of these witnesses substantially similar to their trial and House Subcommittee testimony had been made available to counsel prior to the commencement of the trial, in the form of transcripts of their testimony before either the Senate Select Committee on Presidential Campaign Activities and/or the Grand Jury. Appellant bottoms his argument on a bare contention of entitlement unbuttressed by a claim of prejudice. Indeed, a careful examination of the Congressional and trial transcripts would not support a claim of prejudice.

We conclude, therefore, that Appellant's inability to secure the Subcommittee transcripts did not in any manner result in prejudice to him, and, having so concluded, we decline to accept Appellant's invitation to engage in a fruitless discussion concerning the applicability of the Jencks Act or the principals of *Brady v. Maryland,* as to materials in the possession of Congressional Committees. The failure to produce the House Subcommittee transcript was harmless beyond a reasonable doubt. *United States v. Bundy,* 153 U.S.App.D.C. 191, 472 F.2d 1266 (1972), citing *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); cf. *United States v. Perry,* 153 U.S. App.D.C. 89, 471 F.2d 1057, 1063 (1972).

Appellant's contention of deprivation of his right of compulsory process under the Sixth Amendment must, in light of his failure to show a significant need to justify remedial action, meet a similar fate. Even assuming arguendo that the material was improperly withheld under an invalid claim of Congressional privilege, the fact that the requested House transcript contained little of value to the Appellant's defense is dispositive. Reversal cannot be premised on harmless error, albeit of constitutional significance. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

The District Court's judgment is

*Affirmed.*