UNITED STATES of America, Appellee,

v.

Hector GUZMAN, a/k/a Hector Guzman Rivera, Defendant, Appellant.

No. 95–1234.

United States Court of Appeals, First Circuit.

Submitted May 6, 1996.

Decided June 7, 1996.

Gabriel Hernandez Rivera on brief, and Hector Guzman Rivera, pro se ipso, on supplemental brief, for appellant.

John C. Keeney, Acting Assistant Attorney General, Theresa M.B. Van Vliet and Philip Urofsky, Criminal Division, U.S. Dept. of Justice, and Guillermo Gil, United States Attorney, on brief for appellee.

Before SELYA and CUMMINGS,* Circuit Judges, and COFFIN, Senior Circuit Judge.

SELYA, Circuit Judge.

This appeal raises, *inter alia*, the question whether defendant-appellant Hector Guzman Rivera (Guzman) was twice put in jeopardy for the same offense, thus violating his Fifth Amendment rights. Discerning neither a constitutional flaw nor any other significant error, we affirm the judgment below.

## I. BACKGROUND

The indictment in this case arises out of an aborted drug smuggle that took the appellant by sea from Puerto Rico to the island of St. Maarten in the Netherlands Antilles.[1] According to the appellant's uncontradicted allegations, Victor Ayala, an agent of the United States Drug Enforcement Administration (DEA), followed the LEE MARY (captained by the appellant) to St. Maarten in August 1990, and then surveilled it for two days. At this juncture Dutch authorities boarded the ship, searched her, seized seventy-three kilograms of cocaine, and detained several persons. The appellant alleges that Ayala joined in the search, but the United States maintains that he merely observed it from his surveillance post. At any rate, it is undisputed that after the search had begun Ayala informed the Dutch authorities of Guzman's involvement. Local police ran Guzman to ground nearby and arrested him.

The Dutch government charged Guzman with a crime involving possession of the cocaine stashed on board the LEE MARY. He was tried, convicted, and sentenced to a ten-year term of immurement in St. Maarten. He escaped in May of 1992. Approximately seven months later the DEA arrested him in Puerto Rico when he attempted to sell heroin to an undercover agent. After being found guilty of that crime he was sentenced to 147 months' imprisonment.

The appellant's troubles were not yet behind him: in November of 1993, federal authorities in Puerto Rico indicted several individuals (including Guzman) for the attempted smuggle that had occurred in the summer of 1990. The charges against the appellant included conspiring to possess, with intent to distribute, in excess of five kilograms of cocaine, *see* 21 U.S.C. §§ 841(a)(1) & 846; attempting to import cocaine into the United States, *see id.* §§ 952, 960, & 963; and aiding and abetting the commission of certain charged offenses, *see* 18 U.S.C. § 2.

In due season the district court denied motions to dismiss the indictment which posited, *inter alia*, that the bringing of charges violated the Double Jeopardy Clause, U.S. Const. amend. V, cl.2, and that the delay in

---

* Of the Seventh Circuit, sitting by designation.

1. Further details of the failed drug-smuggling operation can be found in our opinion in *United States v. Laboy–Delgado*, 84 F.3d 22 (1st Cir. 1996).

procuring the indictment countervailed the Speedy Trial Act, 18 U.S.C. §§ 3161–3174. Rather than entrust his fate to a jury, the appellant entered into a plea agreement with the government pursuant to which he pleaded guilty to possession of cocaine with intent to distribute. All other charges against him were dropped. The district court imposed a sentence of seventy months in prison, directing that the term run consecutive to the previously imposed heroin-trafficking sentence. This appeal ensued.

## II. ANALYSIS

In addition to the double jeopardy claim—which has been extensively briefed by Guzman's appellate counsel—Guzman himself advances four other assignments of error in a supplemental pro se brief. We address all five claims.

### A. *Double Jeopardy.*

■ The appellant contends that the offense of conviction in this case and the offense for which he was convicted in St. Maarten are one and the same, thus triggering double jeopardy concerns. Even though both cases involve the appellant's possession of the identical seventy-three kilos of cocaine, destined for importation into the United States via St. Maarten, a towering obstacle looms: the two sets of charges were brought by different governments. The black-letter rule is that prosecutions undertaken by separate sovereign governments, no matter how similar they may be in character, do not raise the specter of double jeopardy as that constitutional doctrine is commonly understood. *See Heath v. Alabama,* 474 U.S. 82, 88, 106 S.Ct. 433, 437, 88 L.Ed.2d 387 (1985); *United States v. Lopez Andino,* 831 F.2d 1164, 1167 (1st Cir.1987), *cert. denied,* 486 U.S. 1034, 108 S.Ct. 2018, 100 L.Ed.2d 605 (1988). This rule derives from the tenet that when "a defendant in a single act violates the 'peace and dignity' of two sovereigns by breaking the laws of each, he has committed two distinct 'offences'" and can be prosecuted and punished for both. *Heath,* 474 U.S. at 88, 106 S.Ct. at 437.

The appellant concedes the general validity of this "dual sovereign" rule, and recognizes that, if applicable in this instance, it shields the United States from the successive prosecution prong of the Double Jeopardy Clause. He argues nonetheless that the shield is unavailable here because the United States government orchestrated the St. Maarten investigation and superintended the ensuing prosecution, thus effectively merging the two sovereigns into one for double jeopardy purposes.

The argument is not entirely without basis. In *Bartkus v. Illinois,* 359 U.S. 121, 131–33, 79 S.Ct. 676, 683–84, 3 L.Ed.2d 684 (1959), the Supreme Court upheld the second of two convictions of a defendant who had been prosecuted by two sovereigns—the federal government and a state—for the same conduct. The Court indicated, however, that under very limited circumstances successive prosecutions by separate sovereigns might transgress the Double Jeopardy Clause. *See id.* at 123–24, 79 S.Ct. at 678–79. *Bartkus* was not such a case because, there, the record did

> not support the claim that the State of Illinois in bringing its prosecution was merely a tool of the federal authorities, who thereby avoided the prohibition of the Fifth Amendment against a retrial of a federal prosecution after an acquittal. It does not sustain a conclusion that the state prosecution was a sham and a cover for a federal prosecution, and thereby in essential fact another federal prosecution.

*Id.*

■ This language strongly suggests that defendants prosecuted by two sovereign governments for the same conduct may on occasion be able to invoke double jeopardy protection. While some courts have brushed aside this language as dictum and hinted that the *Bartkus* exception to the dual sovereign rule may not exist at all, *see United States v. Paiz,* 905 F.2d 1014, 1024 n. 13 (7th Cir. 1990), *cert. denied,* 499 U.S. 924, 111 S.Ct. 1319, 113 L.Ed.2d 252 (1991); *United States v. Patterson,* 809 F.2d 244, 247 n. 2 (5th Cir.1987), most courts have treated the *Bartkus* intimation as good law. *See, e.g., United States v. Certain Real Property and Premises Known as 38 Whalers Cove Dr.,* 954 F.2d 29, 38 (2d Cir.1992), *cert. denied,* 506 U.S.

815, 113 S.Ct. 55, 121 L.Ed.2d 24 (1992); United States v. Raymer, 941 F.2d 1031, 1037 (10th Cir.1991); United States v. Louisville Edible Oil Prods., Inc., 926 F.2d 584, 587–88 (6th Cir.1991); In re Kunstler, 914 F.2d 505, 517 (4th Cir.1990), cert. denied, 499 U.S. 969, 111 S.Ct. 1607, 113 L.Ed.2d 669 (1991); United States v. Bernhardt, 831 F.2d 181, 182–83 (9th Cir.1987); United States v. Lane, 891 F.Supp. 8, 10 (D.Me.1995); United States v. Bouthot, 685 F.Supp. 286, 294 (D.Mass.1988).

We find the gravitational pull of Bartkus irresistible. Indeed, we think that the exception is compelled by the bedrock principles of dual sovereignty. See United States v. Liddy, 542 F.2d 76, 79 (D.C.Cir.1976) ("Bartkus, as we view it, stands for the proposition that federal authorities are proscribed from manipulating state processes to accomplish that which they cannot constitutionally do themselves. To hold otherwise would, of course, result in a mockery of the dual sovereignty concept that underlies our system of criminal justice.").

■ We emphasize that the Bartkus exception is narrow. It is limited to situations in which one sovereign so thoroughly dominates or manipulates the prosecutorial machinery of another that the latter retains little or no volition in its own proceedings. See, e.g., United States v. Baptista–Rodriguez, 17 F.3d 1354, 1361 (11th Cir.1994); Whalers Cove, 954 F.2d at 38; Raymer, 941 F.2d at 1037; Kunstler, 914 F.2d at 517; Liddy, 542 F.2d at 79.

■ Some courts have suggested that a defendant who seeks shelter under the Bartkus exception bears the burden of proving that one sovereign dominated the other's acts. See, e.g., Raymer, 941 F.2d at 1037; Liddy, 542 F.2d at 79. Nevertheless, this court has erected a framework that dictates a somewhat different allocation of the burden. Under this matrix, the defendant must proffer evidence sufficient to establish a prima facie case that the two prosecutions were for the same offense. If the defendant meets his entry-level burden by making an adequate evidentiary showing to that effect, the devoir of persuasion shifts to the government to prove that the offenses are not identical.[2] See United States v. Garcia–Rosa, 876 F.2d 209, 229 (1st Cir.1989), cert. denied, 493 U.S. 1030, 110 S.Ct. 742, 107 L.Ed.2d 760 (1990); United States v. Booth, 673 F.2d 27, 30–31 (1st Cir.), cert. denied, 456 U.S. 978, 102 S.Ct. 2245, 72 L.Ed.2d 853 (1982); see also United States v. Schinnell, 80 F.3d 1064, 1066 (5th Cir.1996) (employing same paradigm); United States v. Inmon, 568 F.2d 326, 331–32 (3d Cir.1977) (same); United States v. Mallah, 503 F.2d 971, 986 (2d Cir. 1974) (same), cert. denied, 420 U.S. 995, 95 S.Ct. 1425, 43 L.Ed.2d 671 (1975).

■ In the Bartkus context, the question whether a defendant is being twice prosecuted for the same offense turns in part on the applicability of the dual sovereign rule. See Heath, 474 U.S. at 88, 106 S.Ct. at 437. Thus, the defendant must produce some evidence tending to prove that the rule should not apply because one sovereign was a pawn of the other, with the result that the notion of two supposedly independent prosecutions is merely a sham. If the defendant proffers evidence sufficient to support such a finding—in effect, a prima facie case—the government must shoulder the burden of proving that one sovereign did not orchestrate both prosecutions, or, put another way, that one sovereign was not a tool of the other. See, e.g., United States v. Harrison, 918 F.2d 469, 475 (5th Cir.1990) (applying burden-shifting matrix in the Bartkus context).[3]

2. Although a double jeopardy claim of the successive prosecution type is admittedly in the nature of an affirmative defense to an indictment, there is nothing unorthodox about requiring the government to bear the ultimate burden of proof vis-a-vis the existence of an alleged constitutional violation once sufficient evidence is adduced to put the question legitimately into issue. See, e.g., United States v. Rodriguez, 858 F.2d 809, 813–15 (1st Cir.1988) (holding that if a defendant identifies record evidence from which a jury could conclude that the defendant was entrapped, the government must bear the burden of proving that no entrapment occurred).

3. There is some controversy in the circuits over whether this procedural matrix applies unreservedly both to interlocutory review of double jeopardy claims and to direct appeals following convictions. Compare United States v. Dortch, 5 F.3d 1056, 1060–61 (7th Cir.1993) (holding that the defendant bears the burden of proof on post-

In this case, it is crystal clear that the appellant did not offer enough evidence to carry his entry-level burden. Factually, his claim comes down to this: he asserts that Agent Ayala traveled to St. Maarten, surveilled the LEE MARY, alerted the St. Maarten police to the appellant's presence, participated in the shipboard search (a fact that the United States contests), and testified at the ensuing trial. Nothing in the appellant's proffer remotely suggests that the Dutch authorities were merely handmaidens of the DEA or that the Dutch prosecution was in reality a prosecution undertaken *sub rosa* by the United States government. Even if all the appellant's facts—stripped, of course, of opprobrious epithets and unsupported conclusions—are taken at face value, those facts show nothing more than the rendering of routine intergovernmental assistance. Cooperative law enforcement efforts between independent sovereigns are commendable, and, without more, such efforts will not furnish a legally adequate basis for invoking the *Bartkus* exception to the dual sovereign rule. *See Whalers Cove*, 954 F.2d at 38; *Paiz*, 905 F.2d at 1024.

Viewed against this legal and factual mise en scène, the indictment in this case did not constitute a second prosecution for the same offense within the purview of the Fifth Amendment. Consequently, the district court did not err in denying the motion to dismiss the indictment on double jeopardy grounds.

### B. *Speedy Trial Act.*

The baseline premise of the Speedy Trial Act is the requirement that a defendant has a right to be tried promptly following his indictment or initial appearance before a judicial officer (whichever first occurs). *See United States v. Staula*, 80 F.3d 596, 600 (1st Cir.1996). Juxtaposed with this requirement is the requirement that, once arrested, a suspect must be indicted or otherwise formally charged within thirty days of his arrest. *See* 18 U.S.C. § 3161(b). The appellant suggests two reasons why the government's actions in this case run afoul of this latter proscription. Neither reason is persuasive.

1. The first iteration of the appellant's speedy trial claim embodies a repullulation of his double jeopardy analysis. He asseverates that since the United States orchestrated his arrest in St. Maarten, 18 U.S.C. § 3161(b) required the United States to indict him within thirty days of that arrest. This asseveration elevates hope over reason, and we need not linger long in dispatching it.

The Speedy Trial Act, in terms, applies only to the conduct of the United States. Because we already have held that the United States did not control, dominate, or manipulate the actions of the Dutch authorities in respect to Guzman's arrest and prosecution in St. Maarten, *see supra* Part II(A), the claim that the date of that arrest affected the movement of the speedy trial clock in this case is without foundation. Arrest or indictment by one sovereign does not engage the statutory guarantee of a speedy trial in respect to a subsequent indictment by a different sovereign. *See United States v. MacDonald*, 456 U.S. 1, 10 n. 11, 102 S.Ct. 1497, 1503 n. 11, 71 L.Ed.2d 696 (1982).

2. The second iteration of the appellant's speedy trial claim takes a somewhat divergent slant. He asserts that, when he was arrested in Puerto Rico for heroin trafficking, the United States knew of his 1990 involvement with the ill-fated cocaine smuggle and, hence, the government was obliged to charge him within thirty days of that arrest, *see* 18 U.S.C. § 3161(b), or in the alternative, to seek a detainer from the Bureau of Prisons (which had custody of him at

---

trial review), *cert. denied*, —— U.S. ——, 114 S.Ct. 1077, 127 L.Ed.2d 394 (1994) *and United States v. Bendis*, 681 F.2d 561, 564 (9th Cir.1981) (same), *cert. denied*, 459 U.S. 973, 103 S.Ct. 306, 74 L.Ed.2d 286 (1982) *with United States v. Loyd*, 743 F.2d 1555, 1563 (11th Cir.1984) (applying standard burden-shifting framework to posttrial review); *United States v. Adamo*, 742 F.2d 927, 946–47 (6th Cir.1984) (same), *cert. denied*, 469 U.S. 1193, 105 S.Ct. 971, 83 L.Ed.2d 975 (1985); *United States v. Kalish*, 690 F.2d 1144, 1147 (5th Cir.1982) (same), *cert. denied*, 459 U.S. 1108, 103 S.Ct. 735, 74 L.Ed.2d 958 (1983); *Mallah*, 503 F.2d at 986 (same). *See also Garcia–Rosa*, 876 F.2d at 229 n. 17 (noting the uncertainty). Since we hold that the appellant did not satisfy his entry-level burden, we need not take sides on this controversial issue today.

the time), *see id.* § 3161(j)(1). This assertion is equally devoid of merit.

In the first place, the Speedy Trial Act requires that a person arrested for a crime must be charged by indictment or information within thirty days of his arrest "in connection with such charges." *Id.* § 3161(b). In this situation, the heroin-trafficking incident that led to the appellant's December 1992 arrest had no connection with his activity in St. Maarten two-and-one-half years earlier. It follows, therefore, that since the authorities did not arrest the appellant in 1992 for a crime related to his St. Maarten conduct, the Speedy Trial Act did not require that he be charged with the cocaine-smuggling crime within thirty days of that arrest. *See United States v. Orbino,* 981 F.2d 1035, 1036–37 (9th Cir.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 256, 126 L.Ed.2d 208 (1993); *United States v. Savage,* 863 F.2d 595, 597–98 (8th Cir.1988), *cert. denied,* 490 U.S. 1082, 109 S.Ct. 2105, 104 L.Ed.2d 666 (1989).

■■■■ In the second place, 18 U.S.C. § 3161(j)(1) applies only to a person who has been "charged with an offense." In this instance, the appellant was not charged with the offenses of conspiracy to possess with intent to distribute and attempted importation until the end of 1993. Until it brought such a charge, the government had no obligation to file a detainer with the Bureau of Prisons.[4]

### C. *Plea Agreement.*

■■■■ The appellant contends that the government breached the plea agreement. He tells us that the U.S. Attorney's office promised it would not oppose a recommendation for a concurrent sentence, but the prosecutor instead argued successfully for a consecutive sentence.

This contention is baseless.[5] The plea agreement signed by the appellant specifically, explicitly, and unambiguously states: "The United States and the defendant agree that the sentence to be imposed in this case shall run consecutive to any other sentence of imprisonment that the defendant is currently serving." The plea agreement also contains an integration clause that provides: "This written agreement constitutes the complete plea agreement between the United States, the defendant, and the defendant's counsel. The United States has made no promises or representations except as set forth in writing in this plea agreement." The questionnaire that the appellant completed in advance of the change-of-plea colloquy is consistent with these understandings.[6] The appellant has made no allegation that he was coerced into signing the plea agreement, that he was misled as to its contents, or that the questionnaire is bogus.

In short, the appellant identifies nothing that would justify an objectively reasonable expectation that the plea agreement meant anything other than what it plainly says. Since the government abided faithfully by the clear terms of its written agreement, we have no warrant to set aside the sentence imposed by the district court. *See United States v. Hogan,* 862 F.2d 386, 388 (1st Cir. 1988).

### D. *Ineffective Assistance of Counsel.*

■■■■ The appellant claims that his trial counsel provided him with ineffective as-

---

**4.** To cinch matters, the law is pellucid that the dismissal of an indictment is not a suitable remedy for a violation of 18 U.S.C. § 3161(j)(1). *See United States v. Wickham,* 30 F.3d 1252, 1255 (9th Cir.1994); *United States v. Dawn,* 900 F.2d 1132, 1135–36 (7th Cir.), *cert. denied,* 498 U.S. 949, 111 S.Ct. 368, 112 L.Ed.2d 330 (1990); *United States v. Anderton,* 752 F.2d 1005, 1008 (5th Cir.1985).

**5.** As an initial matter, we note that the appellant did not raise the issue of the government's alleged breach before the district court. The question of procedural default vis-a-vis claims involving breached plea agreements has divided the courts of appeals. *See United States v. Gonzalez-*

*Perdomo,* 980 F.2d 13, 15–16 (1st Cir.1992) (collecting cases). We need not enter this thicket today because we find the appellant's claim of breach to be without basis.

**6.** The record does not contain a transcript of the change-of-plea hearing. We must assume, therefore, that the appellant's answers to the judge's questions did not differ from the written questionnaire. *See, e.g., Moore v. Murphy,* 47 F.3d 8, 10–11 (1st Cir.1995) (explaining that the appellant must bear the onus of an incomplete record on appeal); *Real v. Hogan,* 828 F.2d 58, 60 (1st Cir.1987) (similar).

sistance by failing to (1) file appropriate pretrial motions, (2) notify the sentencing court of health problems afflicting his family, and (3) make a proper request for the return of property. The rule is firmly settled in this circuit that "fact-specific claims of ineffective assistance cannot make their debut on direct review of criminal convictions." *United States v. Mala,* 7 F.3d 1058, 1063 (1st Cir. 1993) (explaining the rule and collecting cases), *cert. denied,* —— U.S. ——, 114 S.Ct. 1839, 128 L.Ed.2d 466 (1994). While we have made occasional exceptions to the rule in certain idiosyncratic circumstances, *see, e.g., United States v. Natanel,* 938 F.2d 302, 309 (1st Cir.1991), *cert. denied,* 502 U.S. 1079, 112 S.Ct. 986, 117 L.Ed.2d 148 (1992), this case does not fall within the isthmian confines of any recognized exception. Because the appellant did not present this claim of ineffective assistance to the lower court, we decline to consider it.[7]

### E. *Seizure of Property.*

Under the Criminal Rules, a person deprived of property "may move the district court for the district in which the property was seized for the return of the property on the ground that such person is entitled to lawful possession of the property." Fed. R.Crim.P. 41(e). Acting pro se, Guzman made such a motion below; in it, he claimed entitlement to certain items allegedly seized from him at the time of his initial arrest in St. Maarten. He also claimed entitlement to a tool box, together with its contents, alleging that the tool box was inside a car, belonging to his sister, that federal authorities seized in Puerto Rico. The district court found that the property seized in St. Maarten was taken not by the United States but by the Netherlands Antilles, and that, therefore, the court lacked jurisdiction to order its return.[8] However, the district court did not rule on the appellant's motion insofar as it pertained to the tool box's confiscation. The appellant did not ask for reconsideration based on this oversight. He nevertheless attempts to appeal from the court's failure to direct that the tool box be returned.

The government's brief misses the appellant's point. It contends, correctly, that Guzman never made a claim of ownership referable to the car, and thus does not have standing to contest its seizure. *Cf. United States v. One Parcel of Real Property ... Known as Plat 20, Lot 17,* 960 F.2d 200, 206 n. 3 (1st Cir.1992) (noting that a person who does not claim ownership cannot contest the civil forfeiture of property); *United States v. One Parcel of Real Property ... Known as 116 Emerson Street,* 942 F.2d 74, 78 (1st Cir. 1991) (same). But this observation does not in any way trump the appellant's insistence that he owns, and is entitled to the return of, the tool box and its contents.

■■■■ Although the appellant's point is arguable, it is separable from, and has no effect upon, the appellant's conviction and sentence. A defendant may bring an independent civil action for the return of property even if the underlying criminal case has been closed. *See United States v. Garcia,* 65 F.3d 17, 19–20 (4th Cir.1995); *United States v. Giraldo,* 45 F.3d 509, 511 (1st Cir.1995); *United States v. Giovanelli,* 998 F.2d 116, 118–19 (2d Cir.1993). Since such a complaint serves as the functional equivalent of a Rule 41(e) motion, we perceive no need to prolong this case in order to pursue the point (especially in view of the fact that the district court made no findings in regard to the tool box). We therefore deny Guzman's request for relief vis-a-vis the tool box, without prejudice to his right to bring a separate civil action to compel its return. *See United States v. $8,850,* 461 U.S. 555, 569, 103 S.Ct. 2005, 2014, 76 L.Ed.2d 143 (1983).

## III. CONCLUSION

We need go no further. For aught that appears, Guzman was lawfully prosecuted, justly convicted, and appropriately sen-

---

7. Of course, our disposition does not prejudice the appellant's right to raise a claim of ineffective assistance of counsel in a petition for postconviction relief under 28 U.S.C. § 2255. *See Mala,* 7 F.3d at 1064.

8. On appeal, the appellant does not challenge this ruling, and we do not address it.

tenced. His conviction and sentence must therefore be *Affirmed.*