# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
COOK, CAMPANELLA, HAIGHT
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Private E2 SETH D. LEMASTERS**
**United States Army, Appellant**

ARMY 20111143

U.S. Army Combined Arms Support Command,
Sustainment Center of Excellence and Fort Lee
Denise R. Lind, Military Judge
Colonel Andrew J. Glass, Staff Judge Advocate

For Appellant:  Colonel Patricia A. Ham, JA; Lieutenant Colonel Imogene M. Jamison, JA; Major Jacob D. Bashore, JA; Captain John L. Schriver, JA (on brief).

For Appellee:  Colonel John P. Carrell, JA; Lieutenant Colonel James L. Varley, JA; Major Catherine L. Brantley, JA; Captain T. Campbell Warner, JA (on brief).

31 December 2013

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

CAMPANELLA, Judge:

A general court-martial composed of officers and enlisted members convicted appellant, contrary to his pleas, of one specification of aggravated sexual assault and one specification of assault consummated by battery in violation of Articles 120 and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 920, 928 (2006 & Supp. III 2010) [hereinafter UCMJ].[1]  The panel sentenced appellant to a dishonorable discharge, confinement for ten years, forfeiture of all pay and allowances, and reduction to the grade of E-1.  The convening authority approved the sentence as adjudged and credited appellant with 384 days of pretrial confinement credit.

---

[1] Appellant was acquitted of two additional specifications of violations of Article 120, UCMJ, and one specification of assault consummated by battery in violation of 128, UCMJ.

LEMASTERS —ARMY 20111143

This case is before us for review pursuant to Article 66, UCMJ. Appellate defense counsel raises two assignments of error. One assignment of error merits discussion but no relief. The remaining assignment of error and those matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982) are without merit.

**BACKGROUND**

On 25 November 2010, 51-year old civilian female, DA, and her female partner had a get-together at their farmhouse in Gloucester County, Virginia, to celebrate Thanksgiving. DA invited her nephew, Private (PVT) PT, and his friend, appellant, to the holiday celebration and to spend the night at her home. Throughout the day there were games, frivolity, and much drinking. Late that evening, DA's partner left the house to go "Black Friday" shopping. By this time, all the other guests, except for PVT PT and appellant, had gone home.

By the end of the evening, appellant had become progressively more intoxicated and obnoxious. Growing less tolerant of appellant's drunken boorish behavior, DA suggested that it was time for everyone to go to sleep. Private PT helped appellant to his bedroom and placed a garbage can by his bed in case he needed to throw up. DA and PVT PT stayed up a bit longer, eating pie and chatting, before finally retiring to their respective bedrooms to sleep.

Sometime later, DA was awakened by appellant on top of her with his penis inside her vagina. After realizing what was happening, DA pushed appellant off her, grabbed a rifle off the wall, and ran to wake up her nephew to get his help. As PVT PT was getting up, appellant joined them in PVT PT's bedroom and assaulted DA from behind, putting her in a choke-hold. Private PT took the rifle from his aunt, wrestled appellant off her, and told appellant to leave the house immediately. DA then called 911 to report the sexual assault. While DA was on the phone with the emergency operator, appellant retrieved his pants from DA's bedroom and left the house.

Gloucester County Police responded to the 911 call, found appellant in the wooded area outside DA's home, and arrested him. They then conducted their investigation into the allegation. Appellant was interrogated by the Gloucester County Police and his pants were confiscated as evidence. DA was interviewed by the Gloucester County Police and then taken to the local hospital where she underwent a sexual assault examination. Her clothes were also taken during the exam as evidence and turned over to the police for processing. The Gloucester Police also took physical evidence from DA's home, including her sheets, and interviewed PVT PT as well.

The Gloucester County Police placed appellant in Gloucester County jail pending trial. On 26 November 2010, Gloucester County Police notified Training

and Doctrine Command (TRADOC) that appellant was being held on rape charges. That evening the information was subsequently passed to appellant's chain of command.

Appellant was already under investigation by CID stemming from an unrelated sexual assault allegation made eight months prior. On 29 November 2010, Army Criminal Investigation Command (CID) added this new allegation to their case file on the appellant, citing the "Gloucester County initial investigation."

On 1 December 2010, Gloucester County investigators met with CID agents to discuss the prior off-post report of a sexual assault by the appellant against a separate victim. Gloucester County conducted its own investigation into that allegation, including victim and witness interviews. They did not, however, pursue charges in that case, presumably due to jurisdictional restraints.

On 24 May 2011, appellant was tried in the Circuit Criminal Court of Gloucester County, Virginia, for raping DA by force or threat in violation of Virginia law. A jury acquitted appellant of the charge and the court ordered him released from civilian confinement.

Appellant's company commander Captain (CPT) JJ, the brigade trial counsel, CPT JS, and an Army Funded Legal Education Program (FLEP) legal intern were present during the civilian trial. At the conclusion of the trial, appellant was turned over to his company commander, who drove him back to Fort Eustis and informed him that he could potentially be tried again—this time by the Army. That same day, his company commander ordered him into pretrial confinement. Fourteen days later charges were preferred against appellant. He was eventually tried by court-martial and convicted by an officer and enlisted panel of the aggravated sexual assault of DA.

## LAW AND DISCUSSION

*Dual Sovereignty*

Appellant now asserts that his prosecution by a military court-martial after his acquittal in the Circuit Criminal Court of Gloucester County, Virginia, is a violation of his right against double jeopardy and that the dual sovereignty doctrine should not apply in his case. Appellant argues that the State of Virginia was acting as a "tool" of the Army and that the state and the Army "colluded" to prosecute appellant, thus resulting in a sham prosecution. Appellant raised this contention at trial and now reasserts it before this court. We find appellant's right against double jeopardy was not violated by his subsequent court-martial and that the military judge did not abuse her discretion by ruling against appellant on this issue.

3

"Although the Fifth Amendment protects against double jeopardy, its shield only extends to prosecutions by the same sovereign." *United States v. Stokes*, 12 M.J. 229, 230 (C.M.A. 1982). The law is well-settled that multiple prosecutions of an accused by different sovereigns violate neither double jeopardy nor due process. *Bartkus v. Illinois*, 359 U.S. 121 (1959); *Stokes*, 12 M.J. 229.[2] "Dual sovereignty" is a concept firmly embedded in our constitutional jurisprudence, deriving from the reality that each state was an independent political entity before the United States Constitution was ratified. *Printz v. United States,* 521 U.S. 898, 918-19 (1997). As separate sovereigns, the federal government and each state "[have] the power, inherent in any sovereign, independently to determine what shall be an offense against its authority and to punish such offenses, and in doing so each 'is exercising its own sovereignty, not that of the other.'" *United States v. Wheeler*, 435 U.S. 313, 320 (1978) (quoting *United States v. Lanza*, 260 U.S. 377, 382, (1922)). *See also United States v. Lara,* 541 U.S. 193 (2004)*; Heath v. Alabama*, 474 U.S. 82 (1985).

*The Bartkus Exception*

The Supreme Court has articulated an exception to the principle of dual sovereignty. Dual state and federal prosecutions might run afoul of the general rule permitting prosecutions if one authority was acting as a "tool" of the other, or if the state prosecution merely was "a sham and a cover for a federal prosecution." *Bartkus*, 359 U.S. at 123-24. The Court further stated that "at some point the cruelty of harassment by multiple prosecutions by a State would offend due process . . . ." *Id.* at 127.

This "exception," however, is considered extremely narrow and extra-ordinarily difficult to prove. *United States v. Raymer*, 941 F.2d 1031, 1037 (10th Cir. 1991); *United States v. Bernhardt*, 831 F.2d 181, 182 (9th Cir. 1987); *United States v. Rashed*, 234 F.3d 1280, 1282 (D.C. Cir. 2000); *United States v. Guzman*, 85 F.3d 823, 827 (1st Cir. 1996); *United States v. Figueroa-Soto*, 938 F.2d 1015, 1019 (9th Cir. 1991). In the military system of justice, we find a notable absence of the application of this exception.

---

[2] In *Stokes*, the Court of Military Appeals provided, "When the [UCMJ] was first enacted, it had not been firmly established that service members were entitled to the Fifth Amendment protection against former jeopardy. However, Article 44(a) of the [UCMJ] mooted the issue by commanding, 'No person may, without his consent, be tried a second time for the same offense.' Undoubtedly this provision was not intended to abolish the dual-sovereignties rules that had been applied in interpreting the constitutional guarantee against successive trials for the same offense. Thus, trial by a court-martial is barred by the Code only if the accused has already been tried in a court which derives its authority from the Federal Government. But a trial by court-martial is not barred if the earlier trial was by a state or foreign court." 12 M.J. at 231 (internal citations omitted).

The exception is limited "to situations in which one sovereign so thoroughly dominates or manipulates the prosecutorial machinery of another that the latter retains little or no volition in its own proceedings." *Guzman*, 85 F.3d at 827. However, even in *Guzman,* where the evidence indicated that an agent of the United States traveled to the island of St. Maarten, alerted St. Maarten Police to the defendant's presence on a ship smuggling drugs, participated in a search for drugs on board, and testified at trial, the court held that those facts demonstrated, "nothing more than the rendering of routine intergovernmental assistance." *Id.* at 828. The court concluded that "[c]ooperative law enforcement efforts between independent sovereigns are commendable, and, without more, such efforts will not furnish a legally adequate basis for invoking the *Bartkus* exception to the dual sovereign rule." *Id.* In fact, some courts have even questioned whether the exception exists at all. *See United States v. Brocksmith*, 991 F.2d 1363, 1366 (7th Cir. 1993); *United States v. Patterson*, 809 F.2d 244, 247 n.2 (5th Cir. 1987).

Appellant argues essentially three telltale indicators establish the *Bartkus* principle in this case. As evidence of collusion, appellant first notes that two Virginia prosecutors "discussed appellant's case with the military trial counsel and appellant's company commander" before the civilian trial and that the company commander was unsure of the "prosecutor's motives" in having that discussion, which he promptly terminated. Appellant next observes the presence of the company commander, the military prosecutor and a judge advocate FLEP legal intern at the appellant's civilian trial. Lastly, appellant submits that appellant's company commander "whisked him away" after his civilian acquittal and immediately placed him in pretrial confinement. While the record supports these facts as accurate, they do not lead us to conclude that the military exercised any control over Gloucester County's decision to prosecute him.

In fact, we find nothing to suggest that the Army "dominated or manipulated" the prosecutorial machinery of the State or vice versa, such that either one retained "little or no volition in its own proceedings" to warrant an application of the *Bartkus* exception. Rather, the record demonstrates that the military authorities prosecuted appellant because they believed that Gloucester County's civilian authorities failed to protect the military's interests in this case.

## CONCLUSION

Upon consideration of the entire record and the submissions by the parties, we discern no circumstance in this case warranting an exception to the dual sovereignty doctrine. We hold the findings of guilty and sentence as approved by the convening authority correct in law and fact. Accordingly, the findings of guilty and the sentence are AFFIRMED.

5

LEMASTERS —ARMY 20111143

Senior Judge COOK and Judge HAIGHT concur.

FOR THE COURT:

ANTHONY O. POTTINGER
Chief Deputy Clerk of Court