**UNITED STATES of America, Plaintiff-Appellee,**

v.

**George Henry ANDERTON, Defendant-Appellant.**

**No. 84–1611**
**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

Jan. 31, 1985.

Donald Edward Ervin, Houston, Tex., for defendant-appellant.

James A. Rolfe, U.S. Atty., David B. Lewis, Asst. U.S. Atty., Dallas, Tex., for plaintiff-appellee.

Before RUBIN, RANDALL, and TATE, Circuit Judges.

TATE, Circuit Judge:

After a bench trial, the defendant Anderton was convicted of the offense of distributing cocaine in violation of 21 U.S.C. § 841(a)(1). He urges appellate reversal of his conviction on the single ground that the district court erroneously denied his motion to dismiss the indictment for the government's alleged violations of the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.* In particular, Anderton contends that the government violated § 3161(j)(1) by failing—while he was in state custody but under federal indictment—to obtain his presence for a federal trial or to lodge a detainer against him and to advise him of his right to de-

mand a speedy federal trial. We reject this contention and affirm.

I.

Officers of the Dallas Police Department arrested Anderton on December 28, 1982. At that time, Anderton was awaiting trial in Houston, Texas on state narcotics charges. Narcotics also were involved in the December 28th Dallas arrest: the Dallas police charged Anderton with attempted capital murder based on gunshots he allegedly fired when Dallas police officers attempted to arrest him for selling cocaine in the parking lot of a lounge in Dallas.

Though federal officers were present at Anderton's arrest in Dallas, Anderton was not taken into federal custody or brought before a federal judicial officer. Instead, Anderton was taken into state custody at the Dallas County Jail to await trial for attempted capital murder.[1]

On January 12, 1983, while Anderton was in state custody, a federal grand jury indicted him for the cocaine distribution offense of which he ultimately was convicted and from which this appeal is taken. An arrest warrant issued immediately, but the United States Marshall returned it unexecuted on January 14, 1983. The prosecutor did not attempt to notify Anderton of the pending indictment or to obtain his presence for trial. As to Anderton's actual knowledge of the federal indictment, there is a dispute in the record: Anderton submitted to the district court an affidavit stating that he did not know of the indictment; Officer Kirk Griffith of the Dallas Police Department testified that he told Anderton of the federal indictment sometime in January 1984. (The district court made no finding of the fact as to this dispute.)

While the federal indictment was pending, Anderton was taken to Houston, Texas, where he pleaded guilty on January 21, 1983 to a state narcotics offense. He was

---

1. Anderton was wounded in the course of his arrest and may have been taken to a hospital before he was taken at a later time to the Dallas County Jail. This, of course, is immaterial: Anderton was in state custody on a state charge of attempted capital murder from the time of his arrest in the parking lot of the lounge.

sentenced to two years of confinement in the Texas Department of Corrections and thereafter was returned again to the Dallas County Jail to await trial for attempted capital murder. The record discloses lengthy delay in commencement of the attempted capital murder trial, principally caused by continuances sought by Anderton so that he and the state prosecutor could pursue the possibility of a plea bargain.

On April 2, 1984, the government sought and obtained a writ of habeas corpus ad prosequendum directing that Anderton be taken from state custody and placed into federal custody for trial on the federal cocaine distribution indictment pending since January 12, 1983. On April 19, 1984, a magistrate set the conditions of Anderton's pretrial release; it is not clear from the record whether Anderton was present at a proceeding on that date. It is clear that Anderton appeared for arraignment in the district court on April 26, 1984. On that date, Anderton filed a motion to dismiss the indictment for violation of the Speedy Trial Act. The District Court denied the motion at a later date after substantial briefing by both parties.

Anderton's trial began June 4, 1984.[2]

## II.

Anderton asserts that the foregoing facts show a violation of 18 U.S.C. § 3161(j)(1), which provides:

If the attorney for the Government knows that a person charged with an offense is serving a term of imprisonment in any penal institution, he shall promptly—

(A) undertake to obtain the presence of the prisoner for trial; or

(B) cause a detainer to be filed with the person having custody of the prisoner and request him to so advise the prisoner and advise the prisoner of his right to demand trial.

Pursuant to this statutory subsection, the government attorney's obligations are triggered only if the "person charged with an offense is serving a term of imprisonment in any penal institution." Anderton has produced substantial arguments to show that his incarceration in the Dallas County Jail constituted, because of the two-year sentence imposed by a state court in Houston on January 21, 1983, "serving a term of imprisonment in any penal institution." We need not decide this issue, however, because, for the purpose of our analysis, we can assume that Anderton had the requisite status after January 21, 1983 to trigger § 3161(j)(1).

■ With the assumption as to Anderton's status, whether the government violated § 3161(j)(1) depends on whether the government attorney knew of Anderton's status. Such knowledge is, according to the plain terms of the statute, ordinarily a condition precedent to the triggering of the statute's obligations. *United States v. Hendricks*, 661 F.2d 38, 41 (5th Cir.1981).

The government's attorney submitted his affidavit on the issue of his knowledge, and it indicates that he did not know that the defendant was "serving a term of imprisonment" at the same time he awaited trial in the Dallas County Jail. Based on this affidavit, the district court specifically found as a fact that the government's attorney did not have this knowledge. The affidavit could be construed, however, to show that the government's attorney knew of the Houston state conviction and sentence. It does not necessarily follow, though, that he knew the Houston conviction and sentence caused the Dallas jail confinement to constitute the service of a term of imprisonment, for that legal result—contrary to the ordinary expectation that commencement of a Texas prison sentence begins upon entry into the Texas Department of Corrections—is the product of the intricate appli-

---

**2.** Anderton does not claim that his trial began later than seventy days after his first appearance before a judicial officer (either April 19th or 26th). *See* 18 U.S.C. § 3161(c)(1); *United States v. Atkins*, 698 F.2d 711, 714 (5th Cir.1983) (seventy-day trial clock begins with appearance before a judicial officer when that event follows indictment).

cation of Texas decisional and statutory law unknown to the prosecutor.[3]

■ Nevertheless, even assuming most favorably to Anderton that the government attorney's knowledge of the Houston state conviction and sentence triggered his obligations under § 3161(j)(1), we observe that this statutory provision provides no sanction for its violation. Nor is there any other statutory provision stating a sanction for its violation. 18 U.S.C. § 3162 provides the sanctions for Speedy Trial Act violations, and it addresses the dismissal sanction only in the event of violation of the thirty-day time limit for the bringing of an indictment, 18 U.S.C. § 3161(b), or violation of the seventy-day time limit for the commencement of trial, 18 U.S.C. § 3161(c)(1). § 3162 does *not* provide for dismissal in the event of violation of § 3161(j)(1). Anderton's attorney recognized as much, informing the district court: "I am not sure that there are any sanctions for [violations of] (j) in particular." *See generally United States v. Walborn*, 730 F.2d 192, 193–94 (5th Cir.1984) (implicitly recognizing that technical violation of § 3161(j) does not require dismissal); *United States v. Roper*, 716 F.2d 611, 613–14 (4th Cir.1983) (same).

In the absence of direction in the Speedy Trial Act itself, a defendant's right to dismissal might be found in the Sixth Amendment or in Fed.R.Crim.P. 48(b) (discretionary dismissal for unnecessary delay). In either event, however, it is clear that dismissal is warranted only upon a showing of sufficient prejudice caused by the violation of § 3161(j)(1) or, perhaps, a showing of improper prosecutorial motive. *See United States v. Litton Systems, Inc.*, 722 F.2d 264, 270–72 (5th Cir.1984); *United States v. Hendricks*, 661 F.2d 38, 42–43 (5th Cir. 1981); *United States v. Greer*, 655 F.2d 51, 53–54 (5th Cir.1981).

The record in this case lacks any showing of prejudice to Anderton caused by the delay in bringing him to trial. He asserts only that the federal charges complicated his defense effort in the attempted capital murder case in state court, presumably meaning that plea bargaining was complicated and his resources were spread thinner. These things would have happened regardless of the timing of the federal trial or of Anderton's first knowledge of the federal charges. Anderton does not complain of oppressive pretrial confinement or of an impairment of his ability to present a defense because of an impairment of proof. Moreover, Anderton did not deny the offense for which he was convicted in this case, consenting to a bench trial on largely uncontested facts.[4]

The record in this case also shows no improper prosecutorial purpose, and Anderton claims none.

### III.

For the foregoing reasons, Anderton's conviction is AFFIRMED.[5]

AFFIRMED.

---

3. *See* Tex.Penal Code Ann. § 1.07(26) (Vernon 1974); Tex.Code Crim.Proc.Ann. art. 42.09, § 1 (Vernon 1979 & 1984 supp.); *Ex parte Pizzalota*, 610 S.W.2d 486, 488 (Tex.Crim.App.1980); *Legg v. State*, 594 S.W.2d 429, 431–32 (Tex.Crim.App. 1980).

Our decision in *United States v. Hendricks*, 661 F.2d 38 (5th Cir.1981), indicates that in some cases the prosecutor may be charged with constructive knowledge under § 3161(j)(1). The facts in this case fit none of the categories of constructive knowledge mentioned in *Hendricks*, 661 F.2d at 41–42 & nn. 3–5, however, and Anderton does not assert constructive knowledge.

4. Though the government put on what the prosecutor termed "a bare bones case," that case was

not contested by the defendant. Anderton's counsel, in fact, informed the district court before trial: "Just so the Court might be clear on our position, we are really not contesting that he went out there to sell some cocaine that night. Basically what I want to accomplish here is to preserve my error on the Motion to Dismiss the Indictment...."

5. The government also contends that it was absolved of the obligations imposed by § 3161(j)(1), assuming that Anderton had the requisite status to invoke § 3161(j)(1), because Anderton was, during the entire time of his incarceration in the Dallas County Jail, awaiting trial on capital murder charges and therefore possibly within the excludable delay provisions of § 3161(h)(1)(D). This contention presents a

---

question of first impression, one we are not required to reach in this case.