UNITED STATES of America, Appellee,

v.

Francisco LAINEZ–LEIVA, also known as Roberto Cisnero, Oscar Gonzalez and Jose Rodolfo Moreno–Martinez, Defendant–Appellant.

No. 1125, Docket 97–1467.

United States Court of Appeals, Second Circuit.

Argued Oct. 16, 1997.

Decided Nov. 3, 1997.

Paul Silver, Assistant United States Attorney (Thomas J. Maroney, United States Attorney, Northern District of New York, Kimberly M. Zimmer, Assistant United States Attorney, of counsel), Albany, NY, for Appellee.

Jeffrey S. Shelly, Albany, NY, for Defendant–Appellant.

Before: JACOBS and LEVAL, Circuit Judges and RESTANI, Judge.*

PER CURIAM:

On or about October 24, 1994, Francisco Lainez–Leiva, also known as Roberto Cisnero, Oscar Gonzalez, and Jose Rodolfo Moreno–Martinez, a citizen of El Salvador who had previously been convicted of a felony and deported, was found to be in the United States unlawfully without the express consent of the Attorney General, in violation of 8 U.S.C. § 1326(a)(B)(1). On April 17, 1996, a federal grand jury in Albany returned a one-count indictment charging Lainez–Leiva with that offense, and Magistrate Judge Ralph W. Smith signed a warrant for Lainez–Leiva's arrest.

On January 17, 1997, some 270 days later, Lainez–Leiva first appeared and was arraigned, pursuant to a writ of habeas corpus *ad prosequendum* filed on January 14, 1997. Lainez–Leiva moved to dismiss the indictment, asserting that the Government had violated 18 U.S.C. § 3161(j) by failing to lodge a detainer or to obtain promptly his presence for trial.

On March 13, 1997, District Judge Frederick J. Scullin issued a Memorandum and Order denying Lainez–Leiva's motion. The district court found that dismissal of the indictment was not the appropriate remedy for a violation of 18 U.S.C. § 3161(j) and that no Fifth Amendment or Sixth Amendment violation warranting dismissal had taken place (citing Fed.R.Crim.P. 48(b)).

On April 30, 1997, Lainez–Leiva entered a plea conditioned on his retaining the right to appeal the earlier denial of his motion to dismiss the indictment "only in the event the District Court imposes a consecutive sentence, in whole or in part."

Lainez–Leiva raised several objections to the presentence report, and moved for a downward departure pursuant to U.S.S.G. §§ 4A1.3, 5K2.0, 5K2.11 and 5K2.12, on the ground that the district court, having failed

to dismiss his indictment, should depart downwardly to compensate him for the delay in arraignment, which had the effect of adding to his punishment for illegal reentry following deportation.

At sentencing, the district court determined that the Probation Department had properly scored the report, and rejected Lainez–Leiva's argument that the District Court should impose a concurrent sentence as compensation for the Government's delay in acting upon the indictment:

> And we talked about the Speedy Trial Act and [3162] and that the Court should take that into consideration. And you argue to the Court that, because of the violations here, if there is a violation, the Court should consider sanctions. I don't think that's appropriate nor do I think this necessarily calls for sanctions, even if I were to find a violation of that section. But I think it's something the Court has to take into consideration in fashioning its final decision.

The court concluded that the base offense level was 8, the adjusted base offense level was 10, the criminal history category VI, the Guidelines range was 24–30 months, and the appropriate sentence was 24 months to be served concurrently with the unexpired portion of Lainez–Leiva's state prison term. Lainez–Leiva's state term will end no later than January 21, 2000; his earliest conditional release date is currently set for April 21, 1998.[1]

## DISCUSSION

On appeal, Lainez–Leiva contends that the District Court (i) should have dismissed the indictment against him because the Government failed to timely lodge a detainer against him or (ii) alternatively, should have imposed a more lenient sentence in light of the Government's delay. While the 270–day delay in the present case was less than exemplary, it does not bear the significance that Lainez–

---

* The Hon. Jane A. Restani, United States Court of International Trade, sitting by designation.

1. At the time of the opening brief, defense counsel believed that the earliest date on which Lainez–Leiva would qualify for conditional release was in September, 1997. However, due to disciplinary infractions he has committed while in state custody, Lainez–Leiva will not be eligible for conditional release from state custody until April, 1998.

Leiva ascribes to it, for the reasons that follow.

■ Section 3161(j) of the Speedy Trial Act provides that:

(1) If the attorney for the Government knows that a person charged with an offense is serving a term of imprisonment in any penal institution, he shall promptly—

(A) undertake to obtain the presence of the prisoner for trial; or

(B) cause a detainer to be filed with the person having custody of the prisoner and request him to so advise the prisoner of his right to demand trial.

18 U.S.C. § 3161(j). It is apparently undisputed that, owing to the failure of an investigating agent to execute the warrant signed on April 17, 1996, the Government failed to promptly lodge a detainer with respect to Mr. Lainez–Leiva, despite its knowledge that he remained in the prison where he was originally located.

The text of the statute itself does not refer to dismissal as an available remedy for failure to promptly arraign an imprisoned defendant. While section 3162 mandates dismissal for *other* specified Speedy Trial Act violations, the only stated remedies for failure to promptly lodge a detainer are (i) a fine of $250 or less upon the Government attorney responsible for the delay; (ii) denial of the Government attorney's right to practice before the court in question for a period of 90 days or less; or (iii) the filing of a report with an appropriate disciplinary committee; and even those remedies are available only in the event of a *willful* failure (not present here). *See* 18 U.S.C. § 3162(b)(4).

Every other circuit that has visited the question has determined that dismissal of the indictment is not an appropriate remedy for a violation of 18 U.S.C. § 3161(j). *See United States v. Guzman,* 85 F.3d 823, 829 n. 4 (1st Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 537, 136 L.Ed.2d 422 (1996); *United States v. Wickham,* 30 F.3d 1252, 1255 (9th Cir.1994); *United States v. Dawn,* 900 F.2d 1132, 1135–36 (7th Cir.), *cert. denied,* 498 U.S. 949, 111 S.Ct. 368, 112 L.Ed.2d 330 (1990); *United States v. Stoner,* 799 F.2d 1253, 1257 (9th Cir.), *cert. denied,* 479 U.S. 1021, 107 S.Ct. 678, 93 L.Ed.2d 729 (1986); *United States v. Valentine,* 783 F.2d 1413, 1416 (9th Cir.1986); *United States v. Anderton,* 752 F.2d 1005, 1008 (5th Cir.1985). Each court has analyzed the language of the statute and concluded that while Congress authorized dismissal as a sanction for some Speedy Trial Act violations, § 3161(j) violations are not among them.

In the leading case of *Valentine,* a panel of the Ninth Circuit read the wording, consulted the legislative history, and determined that the word "promptly" in section 3161(j) is insufficiently definite and objective to be a time limit, the violation of which could subject the indictment to dismissal. *Valentine,* 783 F.2d at 1416, n. 2. The court therefore concluded that Congress intended that the sanctions against counsel listed in 18 U.S.C. § 3162(b)(4) be the only available measures for penalizing undue delay in this area. *Id.*

We join other circuits in adopting the *Valentine* court's rationale, and hold that dismissal of the indictment is not an authorized remedy for a violation of section 3161(j). The rule urged by the defendant would impose strict liability on the Government for delay in its prosecution of defendants who are already in jail, a drastic result that we believe Congress did not intend, particularly since, as the *Valentine* court noted, other, lesser sanctions are available under the statute. *See Resolution Trust Corp. v. Diamond,* 45 F.3d 665, 670 (2d Cir.) (distinguishing between court's authority to construe a statute and its lack of authority to create a new remedy beyond what Congress has decided to adopt), *cert. denied,* 515 U.S. 1158, 115 S.Ct. 2609, 132 L.Ed.2d 853 (1995).

■ Alternatively, Lainez–Leiva contends that the Government's delay in arraigning him constituted a violation of the Sixth Amendment warranting dismissal of the indictment. This argument too is unavailing.

*Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2191, 33 L.Ed.2d 101 (1972) sets out the four factors that must be considered in determining whether dismissal of an indictment is the appropriate remedy for a Sixth Amendment violation: (1) the length of

the delay; (2) the reason for the delay; (3) whether defendant had asserted his rights; and (4) the prejudice to the defendant resulting from the delay. The Supreme Court cautioned, however, that "these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process." *Id.* at 533, 92 S.Ct. at 2193. In the present case, the record reveals that the delay was 270 days long and resulted from the Government's inadvertence rather than misconduct. There is no claim that the defendant failed to assert his rights promptly upon becoming aware of the outstanding indictment against him. The district court correctly decided, however, that the defendant suffered no prejudice as a result of the delay and that therefore dismissal was inappropriate.

Lainez–Leiva has not claimed (and cannot claim) that the delay in arraignment prejudiced his ability to prepare his defense, because he has no defense. *See United States v. Adeogba,* No. CR 86–0–49, 1987 WL 114848, at *3 (D.Neb. Nov.6, 1987) ("The most important factor in determining whether defendant was prejudiced by the delay is the possibility that the defense will be impaired, for 'the inability of a defendant adequately to prepare his case skews the fairness of the entire system.'") (citation omitted); *see also Anderton,* 752 F.2d at 1008; *Valentine,* 783 F.2d at 1418. Nor can Lainez–Leiva claim prejudice traceable to any oppressive pretrial incarceration, because he would have been serving his state sentence in any event.

Lainez–Leiva's claim of prejudice rests exclusively on his contention that the Government's delay means that "the possibility that [he] might receive a sentence at least partially concurrent with the one he is serving may be forever lost ...." *Smith v. Hooey,* 393 U.S. 374, 378, 89 S.Ct. 575, 577, 21 L.Ed.2d 607 (1969). This contention, if adopted, would be available to every defendant claiming a § 3161(j) violation in respect of any offense for which Congress has not mandated a consecutive sentence. In every such case there is at least the possibility that the federal charge could carry a sentence wholly or partially concurrent to the sentence that the inmate is already serving.

Lainez–Leiva's argument that he has been prejudiced by loss of the opportunity for a concurrent sentence is particularly problematic in his case. His state sentence may last until as late as 2000; so he may yet serve an entirely concurrent sentence on his federal conviction. In any event, Lainez–Leiva had no right to a concurrent sentence. He does not claim that the district court was required to impose a concurrent sentence in his case; in fact, the district court was authorized to impose either a concurrent or consecutive sentence. *See* U.S.S.G. § 5G1.3(c). We agree with the district court that Lainez–Leiva has not suffered the type of prejudice that would give rise to a Sixth Amendment violation.

Lainez–Leiva's citation to *Strunk v. United States,* 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973) and *Hooey* does not persuade us that an automatic dismissal of the indictment is mandated by the loss of a mere possibility of a fully concurrent sentence. *Strunk* stands for the proposition that the denial of speedy trial rights may cause prejudice even to a defendant who is already incarcerated so that, if the court determines—based on its weighing of the totality of the *Barker* factors, including prejudice— that a delay has infringed on a defendant's Sixth Amendment rights, the court must dismiss the indictment. Neither *Strunk* nor *Hooey,* however, assists Lainez–Leiva in establishing the predicate Sixth Amendment violation in the first instance. Here, the district court correctly balanced the *Barker* factors, including the absence of any demonstrable prejudice, and its conclusion that Lainez–Leiva had suffered no violation of his Sixth Amendment rights is affirmed. Because Lainez–Leiva's Fifth Amendment claim is subsumed in his Sixth Amendment claim, the failure of the latter forecloses the former as well.

Lainez–Leiva's second ground of appeal is that the district court erred at sentencing by rejecting (or failing to rule) on Lainez–Leiva's motion to remedy the section 3161(j) violation via a downward departure.

■ First, the district court did rule on Lainez–Leiva's motion. The district court observed that Lainez–Leiva had "brought every possible issue to the forefront," and stated that all of the defendant's objections were considered. It is clear that the district judge denied the motion, although he did not explicitly state that he was doing so. The fact that the district court did not particularly state that he was denying the downward departure is not dispositive:

> In most sentencing appeals, a reviewing court is entitled to assume that the sentencing judge understood all available sentencing options, including whatever departure authority existed in the circumstances of the case. If a judge has discretion as to some aspect of the sentence, such as a downward departure in appropriate circumstances, the absence of a favorable outcome for the defendant can normally be attributed to the judge's exercise of discretion. And the assumption that the judge exercised available discretion can normally be made, whether or not the judge expressly so stated. Some sentencing judges understandably would prefer to reject departure requests implicitly, rather than announce that they have discretion to make a departure but have concluded that the defendant does not merit such consideration.

*United States v. Rivers*, 50 F.3d 1126, 1131 (2d Cir.1995) (internal citations omitted); *see also United States v. Rosalez–Cortez*, 19 F.3d 1210, 1221 (7th Cir.1994); *United States v. DiIorio*, 948 F.2d 1, 9 (1st Cir.1991).

■ The district court's denial of the motion for a downward departure is fatal here. "[I]t is well established in this Circuit that a court's decision not to depart from the Guidelines is normally not appealable." *United States v. Brown*, 98 F.3d 690, 692 (2d Cir.1996); *United States v. Martin*, 78 F.3d 808, 814–15 (2d Cir.1996). The only exceptions to this rule are inapposite: where the defendant shows that a violation of law occurred, that the Guidelines were misapplied, or that the refusal to depart was based on the sentencing court's mistaken conclusion

that it lacked the authority to depart. For the same reasons stated in *Rivers*, in the absence of any remarks by the district judge indicating doubt on a point of law, or as to the options available, a reviewing court should not deem silence an indication that the district court misunderstood its authority.

Having determined that the district judge understood his discretion to depart in an appropriate case, we have no further role to play in evaluating the reasonableness of the determination that Lainez–Leiva's was not that appropriate case.

## CONCLUSION

Lainez–Leiva's conviction and sentence are affirmed.[2]

---

**2.** This opinion reflects consideration of Lainez–Leiva's Reply Brief, which was filed pursuant to an Order dated October 31, 1997.