**UNITED STATES of America,**
**Appellee,**

v.

**Albert J. PIRRO, Jr., Defendant,**

**Anthony G. Pirro, Defendant–**
**Appellant.**

**No. 00–1722.**

United States Court of Appeals,
Second Circuit.

May 4, 2001.

Cathy Seibel, Assistant United States Attorney, for Mary Jo White, United States Attorney for the Southern District of New York; Elliot B. Jacobson, Assistant United States Attorney, on the brief, for appellee.

Roger L. Stavis, Stavis & Kornfeld, LLP, New York, NY; Frederick E. Schmidt, on the brief, for defendant-appellant.

Present McLAUGHLIN, CALABRESI, and POOLER, Circuit Judges.

*SUMMARY ORDER*

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the District Court be and it hereby is AFFIRMED.

Defendant-appellant Anthony Pirro ("Pirro") appeals from his conviction and sentence following a jury trial in the United States District Court for the Southern District of New York (Barrington D. Parker, Jr., *Judge*). Pirro, an accountant, was charged with helping his older brother Albert to evade federal income tax. This endeavor Pirro carried out in his capacity as accountant to Albert and to several of Albert's businesses. The tax evasion was accomplished primarily through the systematic payment by Albert's law firm and other enterprises of large personal expenses and the subsequent deduction of those payments as business expenses. On appeal, Pirro argues that the conviction should be reversed on the grounds that the prosecutor's summation was improper and that the trial judge gave an improperly coercive jury instruction upon learning of a deadlock. Pirro also challenges the district court's refusal to grant a downward departure from the Sentencing Guidelines. We affirm.

*The Jury Instruction*

On the third day of its deliberations, the jury sent out a note indicating that Juror No. 8, who had previously complained of external pressures on his deliberations, wanted to speak with the trial judge. A brief colloquy, held outside the hearing of the other jurors, revealed that the juror had a conflict with fellow jurors about the substance of the case. Judge Parker then, with the consent of counsel, repeated to the entire jury his previous instruction directing each juror both to maintain an open mind with respect to each other's arguments and also to resist abandoning his or her assessment of the evidence merely because he or she had been "outnumbered or out talked."

The next day, the jury sent out the following note:

Judge Parker: Juror # 8 has a problem with your directions to us regarding the nature of tax crimes. Juror # 8 cannot separate the fact that we are not concerned here with civil liability but with a criminal case. Juror # 8 says he cannot continue with the deliberations with counts 1–5 nor will he change his mind!

In response, the parties agreed that the court should essentially repeat the previous day's instruction and also remind the jury of its duty to accept and follow the court's legal instructions. Defense counsel also expressed concern that Juror No. 8 not be singled out in any manner. The prosecution suggested (over defendants' objection) that the court also reiterate its instructions on the distinctions between civil and criminal liability.[1] Judge Parker rejected the prosecution's proposal and said he would "give the charges I give."

Judge Parker then instructed the jury in terms largely similar to those he used the day before but with two variations. First, after reiterating that "if any one of you has a point of view that does not agree with the rest, you're not obligated, as I told you, to give up simply because you've been outnumbered," Judge Parker added:

But, by the same token, I want you to continue to listen to one another. And if you find that the views of the others jurors seem to you to be more correct than your own, put ego aside and think through what you're hearing. Don't have any kind of artificial investment in your own point of view if you're getting information that would reasonably cause

---

1. The civil/criminal distinction was the subject of instructions because, throughout trial, defense counsel had attempted to downplay the Pirros' culpability by stressing that, after the government commenced its investigation, Albert had voluntarily filed amended tax returns and paid his back taxes.

you to change it. And don't feel embarrassed or anything of that sort because your fellow jurors may have told you something on a topic that would require you to change an opinion you may have held at some point earlier in the deliberations and may be reluctant to change it.

After Judge Parker finished instructing the jury, defense counsel requested that the court add once again that no juror should give up his view of the facts merely because others disagree, and the court did so. Counsel also objected that the instruction went beyond that contemplated at sidebar and had the nature of an *Allen* charge.

■ We have long held that there is nothing improper with instructions that encourage a deadlocked jury to reach a verdict, so long as "jurors are [not] encouraged to abandon, without any principled reason, doubts that any juror conscientiously holds as to a defendant's guilt." *United States v. Melendez,* 60 F.3d 41, 51 (2d Cir.1995), *cert. denied as to appellant challenging jury instruction sub nom. Sanchez v. United States,* 516 U.S. 1148, 116 S.Ct. 1020, 134 L.Ed.2d 99 (1996), *judgment vacated as to another appellant and on other grounds sub nom. Colon v. United States,* 516 U.S. 1105, 116 S.Ct. 900, 133 L.Ed.2d 834 (1996). And we see nothing coercive in Judge Parker's instruction here. Not only did the charge emphasize that no juror should abandon his position merely because he was outnumbered, but the charge did not even include the language, approved in *Allen* itself, suggesting that the mere fact that one is outnumbered should cause a juror at least to reexamine his views. *See, e.g., United States v. Hynes,* 424 F.2d 754, 755 n. 2 (2d Cir.1970) (approving charge using language quoted from *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896)). Moreover, the charge contained none of the familiar language encouraging jurors "to reach a verdict, if possible, to avoid the expense and delay of a new trial." *Melendez,* 60 F.3d at 51.

■ It is true that when the court knows that a lone juror is deadlocking the jury, special caution is appropriate to avoid coercion. And this is all the more so when the holdout is aware that his position is known to the judge. *See Jiminez v. Myers,* 40 F.3d 976, 981 (9th Cir.1993); *see also Hynes,* 424 F.2d at 757 (citing "foreknowledge of the numerical split [in the jury]" as heightening the danger of coercion). In this respect, defendant argues that the charge, as a practical matter, put asymmetrical pressure on the majority and on Juror 8. But "[w]e have never held that the trial court must specifically inform the jury that the majority must consider the arguments and the opinions of those in the minority," *Melendez,* 60 F.3d at 52, and we conclude that the instruction at issue here did not single out Juror No. 8 in any improper or coercive fashion.

■ Pirro also objects to that aspect of Judge Parker's instruction that reminded the jury that its task was "to apply the law that I gave to you whether you agree with it or not; whether you think it should be otherwise or whether you think it's foolish, good or bad. Doesn't matter." Defendant argues that "[w]hile it is doubtless true that Juror Number 8 was required to 'follow the law,' under the circumstances of this case, such an instruction was tantamount to a direction to 'follow the eleven other jurors.'" We see no merit in this argument.

Because Judge Parker's instructions were legally correct and because his decision to deliver them as and when he did constituted a proper exercise of his discretion, *see Vichare v. AMBAC Inc.,* 106 F.3d 457, 462 (2d Cir.1996); *United States v. Civelli,* 883 F.2d 191, 195 (2d Cir.1989), we

need not resolve the parties' dispute as to whether Pirro's objections to the charge were adequately preserved for appellate review.

*The Prosecution's Summation*

Pirro claims that he was deprived of a fair trial by the government's summation, during which the prosecutor (1) allegedly pointed toward the jury and argued that the jurors, as taxpayers, were among the victims of defendants' alleged crimes, (2) cited former President Nixon to illustrate the plausibility that successful, intelligent people can do foolish, criminal things and even keep records to prove it, (3) argued that "justice demands" a conviction, (4) asked the jurors to reject certain of defendants' arguments as implausible and contrary to common experience, (5) referred to the defendants as "crooks," and (6) sarcastically disparaged some of the inferences defendants asked the jury to draw. Defendants contemporaneously objected only to items (2) and (3), though they also objected to item (1) during the recess immediately following the summation.

■■■ Issues (4)-(6), which defendants entirely failed to raise below, merit little discussion. When entering rhetorical battle with defense counsel, nothing requires the government to disarm unilaterally, *see United States v. Rivera,* 971 F.2d 876, 884 (2d Cir.1992); *United States v. Wilner,* 523 F.2d 68, 74 (2d Cir.1975), and, assuming *arguendo* that the prosecution strayed beyond the appropriate use of colorful and pointed language, the summation did not approach the sort of "flagrant abuse" required for reversal when defendants fail to lodge a timely objection. *United States v. Rivera,* 22 F.3d 430, 437 (2d Cir.1994).

■■■ With regard to the remaining aspects of the summation, we find that nothing in the prosecutor's remarks deprived defendant of a fair trial. First, there was

nothing improper in the prosecution's emphasis on the importance of voluntary tax compliance and the burden placed on law-abiding citizens when others evade their obligations. And the fact that this argument implies that jurors, as taxpayers, are harmed by the crimes at issue does not render the argument improper. *Cf. United States. v. Rahman,* 189 F.3d 88, 140 (2d Cir.1999) (holding that prosecutor's remark that defendants "conspired to steal from Americans their freedom from fear" was not improper, because it accurately described the purpose and effect of the terrorist conspiracy with which defendants were charged). If the law were otherwise, prosecutors could never argue that the community at large (of which jurors are always a part) is injured through criminal activity. Moreover, in this case, the government was responding to defendants' intimation that criminal liability was inappropriate when the back taxes at issue had been repaid. Therefore, although it may be improper to make truly direct appeals to the jurors' personal stake in the crimes at issue, we do not believe that the prosecutor's alleged gesture toward the jury box while making reference to the taxpaying public's interest in the case, if it did occur at all, was sufficiently inflammatory to warrant a new trial. *See United States v. D'Anna,* 450 F.2d 1201, 1205–06 (2d Cir. 1971) (holding that prosecutor's repeated request that "members of the jury ... consider the fact that they as citizens carry an additional burden when someone does not pay his taxes," though improper, did not require a new trial).

■■■ Second, there was nothing wrong with the government's invocation of former President Nixon. It is plain from the context of the remarks, made in the rebuttal summation, that the government was answering the defense's summation argument that it was implausible for such an

accomplished and prominent figure as Albert Pirro to have jeopardized his career through tax fraud and to have left a paper trail that would reveal it. The government was explicit that it invoked Nixon to illustrate its point that "every day intelligent, educated people leave paper trails that show they did something wrong" and took care to make clear that it was "not saying [that] Albert Pirro did anything like" the burglary, bribery, and obstruction of justice associated with the Watergate scandal. We agree with Judge Parker's determination that this aspect of the summation, "at the end of a passionate trial, was within the bounds of proper advocacy."

Third, the prosecutor's argument to the jury that "justice demands" a conviction was perfectly legitimate. We have, of course, strongly disapproved arguments that, as a general matter, convictions are more just results than acquittals and that invite the jury to convict without first determining that guilt has been proven beyond a reasonable doubt. *See United States v. Friedman,* 909 F.2d 705, 709 (2d Cir.1990) (reversing conviction where prosecutor's summation "invited [the jury] to conclude that everyone the Government accuses is guilty, that justice is done only when a conviction is obtained, and that defense counsel are impairing this version of justice by having the temerity to provide a defense and to try to 'get' the guilty 'off.' ") But, of course, justice *does* demand convictions of those proven guilty beyond a reasonable doubt, just as it requires acquittals when the government's proof falls short. The government's appeal here, as the district court found, was plainly designed to sum up its contention that it had proven its case for conviction and to impress upon the jury that, assuming the case had been proven, conviction was a just result and that the jury should not be tempted to nullify. Accordingly, it was entirely proper.

*The Denial of a Downward Departure*

" 'It is well established in this Circuit that a court's decision not to depart from the Guidelines is normally not appealable. The only exceptions to this rule are ... where the defendant shows that a violation of law occurred, that the Guidelines were misapplied, or that the refusal to depart was based on the sentencing court's mistaken conclusion that it lacked the authority to depart.' " *United States v. Zapata,* 135 F.3d 844, 846 (2d Cir.1998) (quoting *United States v. Lainez Leiva,* 129 F.3d 89, 93 (2d Cir.1997)) (ellipses in original). Here, Judge Parker plainly understood that he had the discretion to depart downward, but only if he believed that Pirro's circumstances took him outside the "heartland" of tax evasion cases. He stated, for instance, "I understand that where there is an especially unusual combination of circumstances ... the theoretical possibility of a departure exists, but unfortunately, I have to tell you that it's just ... not present in this case." The fact that Judge Parker expressed his frustration with the result of the Guidelines calculation—in particular the fact that, because of Pirro's role as a tax preparer and his criminal history, his sentence (37 months) was longer than Albert's (29 months)—and his belief that this result was unjust because "Albert ... was by far the most culpable" does not warrant a different conclusion. *See United States v. Brown,* 98 F.3d 690, 694 (2d Cir.1996) (holding that a sentencing judge's "expressions of frustration with a sentence range prescribed by the Guidelines" and explanation that "my hands are tied by the Guidelines" do not indicate a misapprehension of his departure authority). Accordingly, Judge Parker's decision not to depart downward is unreviewable in this appeal.

We have considered all of appellant's contentions and, finding them to lack merit, we AFFIRM the judgment of the district court.