**UNITED STATES of America,**
**Appellee,**

v.

**Maria HURTADO, Defendant–**
**Appellant.**

**Docket No. 00–1644.**

United States Court of Appeals,
Second Circuit.

June 10, 2002.

B. Alan Seidler, Law Office of B. Alan Seidler, Nyack, NY, for Appellant.

Barbara D. Cottrell, Assistant United States Attorney (Joseph A. Pavone, United States Attorney for the Northern District of New York; William C. Pericak, Assistant United States Attorney, on the brief), Albany, NY, for Appellee.

Present STRAUB and SOTOMAYOR, Circuit Judges, and GOLDBERG, Judge.*

SUMMARY ORDER

AFTER ARGUMENT AND UPON DUE CONSIDERATION, IT IS HERE-BY ORDERED, ADJUDGED AND DE-CREED that the judgment of the District Court is hereby AFFIRMED IN PART and REMANDED IN PART.

Defendant–Appellant Maria Hurtado appeals from a judgment of conviction entered on September 11, 2000, in the United States District Court for the Northern District of New York (Lawrence E. Kahn, *Judge*), following a jury trial. Hurtado argues that the evidence at trial was insufficient to sustain her conviction, that the District Court erred in admitting the testimony of the Government's expert witness, that she received ineffective assistance of counsel in connection with her decision not to plead guilty, and that the District Court erred at sentencing in refusing to downwardly depart from the applicable sentencing guideline.

The original, one-count indictment, filed September 17, 1997, charged Hurtado with international transportation of more than $10,000 after willfully failing to file a currency report, in violation of 31 U.S.C. §§ 5316 and 5322. In a superseding indictment filed November 18, 1999, three counts were added to the original charge: international transportation of funds with the intent to promote unlawful activity, in violation of 18 U.S.C. § 1956(a)(2)(A); international transportation of the proceeds of unlawful activity with the intent to conceal the nature, location, source, ownership or control of the funds, in violation of 18 U.S.C. § 1956(a)(2)(B)(i); and international transportation of the proceeds of unlawful activity with the intent to avoid federal currency reporting requirements, in violation of 18 U.S.C. § 1956(a)(2)(B)(ii). Hurtado pleaded not guilty, and her case proceeded to a three-day jury trial that began on January 26, 2000.

---

* The Honorable Richard W. Goldberg, Judge of the United States Court of International Trade, sitting by designation.

The evidence at trial established the following. At about 2:40 a.m. on April 17, 1997, a minivan carrying Hurtado, two other adults, and three children crossed the border between the United States and Canada at Champlain, New York, and was stopped at Canadian customs. The driver of the minivan told the Canadian customs officer that all occupants of the van lived in Canada, but the only documentary proof of residence produced by anybody in the van consisted of two United States passports. Canadian customs agents then began to search the van. The first bag of luggage inspected was found to contain $290,000 in cash, grouped into twenty-nine bundles of $10,000 apiece, each with the number "10" written on the top bill. Hurtado volunteered that the bag was hers. At the request of the customs agents, Hurtado brought her luggage and other belongings with her to an interview room. Among Hurtado's belongings were a visitor's permit for Canada and a letter purportedly from E & M Seafood in Miami, Florida, stating that Hurtado had been employed by E & M for the previous eight years as a sales manager, earning $1,200 per week plus commissions. Hurtado refused to explain why she had the cash that was found in her bag or what she had intended to do with it.

The customs officers next interviewed Luz Hurtado, also a passenger in the minivan, and searched her luggage. The search revealed another bag containing cash, in this case five bundles of $20 bills, totaling $50,000. Maria Hurtado admitted that the money belonged to her, not Luz. Inspection of the van yielded another item of luggage, which contained twenty bundles of $20 bills, totaling $200,000. Overall, fifty-four bundles of currency were found, totaling about $540,000. The customs officers also used a dog trained in the detection of narcotics and firearms to examine the van and the bags, and the dog reacted to the two bags that had contained the larger sums of cash.

The Government presented testimony from agents of the United States Customs Service as to the methods commonly used by Latin American drug cartels to exchange large quantities of drugs for cash, including the frequent use of couriers, the packaging of the cash in bundles of $20 bills, and the placing of the cash inside the bag or container that previously had carried the drugs. The Government also produced tapes and transcripts of a Canadian wiretap that had intercepted several conversations between Hurtado and a man in Montreal named Daniel Serrero, who later pled guilty to conspiracy to import cocaine. The conversations were consistent with the negotiation of an arrangement to supply cocaine.

The evidence also showed that Hurtado had completed customs forms in the past, and had indicated on such forms that she had read the warning that required reporting of more than $10,000 in cash. Finally, the evidence revealed that Hurtado had never been employed by E & M Seafood in Miami, had not filed income tax returns from 1993 through 1998, and had worked with her sister cleaning houses from 1992 until at least 1995.

On January 31, 2000, the jury convicted Hurtado on all four counts of the superseding indictment. At a hearing on September 7, 2000, the District Court sentenced Hurtado to 87 months' incarceration on each count, to run concurrently and to be followed by a term of three years of supervised release. Judgment was entered on September 11, 2000, and Hurtado timely appealed to this Court.

■ On this appeal, Hurtado first argues that the evidence at trial was insufficient to sustain her conviction.

A defendant challenging the sufficiency of the evidence bears a heavy burden.

When reviewing sufficiency challenges, we view the evidence in the light most favorable to the government, drawing all inferences in the government's favor. An appellant must demonstrate that no rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt.... Finally, we note that the task of choosing among competing, permissible inferences is for the fact-finder, not for the reviewing court.

United States v. McDermott, 245 F.3d 133, 136–37 (2d Cir.2001) (citations and internal quotation marks omitted). As described above, the evidence showed that Hurtado, who had no reported income in the previous five years and who falsely claimed to have been employed by a seafood distributor in Miami, had attempted to cross into Canada with over a half-million dollars in cash—carried in bags that bore a residual odor of either narcotics or firearms—and presented no legitimate explanation regarding the source of the cash or its intended destination. Having considered the evidence in the light most favorable to the Government, we find that a rational jury could have found the essential elements of the money-laundering and currency non-reporting charges to have been proved beyond a reasonable doubt, and therefore we reject Hurtado's challenge to the sufficiency of the evidence.

■ Next, Hurtado contends that the District Court erred in allowing testimony by Dr. Stephan Rose, the Government's expert witness. Dr. Rose, a physician with training in forensic toxicology and substantial experience as an expert witness, testified, *inter alia*, that the customs dog's reaction to the bags that had contained the money indicated that there was a residual odor of either narcotics or firearms on the inside of the bags. Hurtado now asserts that Dr. Rose's testimony was inadmissible. To the extent that this challenge may be construed to pertain to the presentation of Dr. Rose as an expert witness, Hurtado's argument has been waived by her counsel's failure to object at trial to the District Court's certification of Dr. Rose as an expert witness. If, instead, Hurtado is asserting that Dr. Rose had no scientific basis for his conclusion, we find the argument to be meritless. Dr. Rose testified at length as to the facts and methodology on which his testimony was based, and his testimony satisfies the requirements of Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

■ Hurtado also argues that she was denied effective assistance of counsel, in violation of the Sixth Amendment. *See Strickland v. Washington*, 466 U.S. 668, 687–96, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Specifically, Hurtado asserts that Jorge Guttlein, who was her counsel for several months during the pre-trial period of this case, failed to tell her that the Government had threatened to file a superseding indictment with additional charges if Hurtado did not plead guilty to the original, one-count indictment. Hurtado contends that she was thereby deprived of the opportunity to make an informed decision about whether to plead guilty. *See generally Cullen v. United States*, 194 F.3d 401 (2d Cir.1999) (attorney's failure to tell client about plea offer may constitute ineffective assistance of counsel). In response, the Government argues that B. Alan Seidler, who replaced Guttlein as Hurtado's counsel prior to trial, never properly presented this ineffectiveness claim to the District Court, and therefore the claim has been waived. However, the record reveals little about the relevant sequence of events. For example, the record tells us virtually nothing about: (1) the timing and content of the original plea offer; (2) what Hurtado was told about the original plea offer; (3) the timing and content of the Government's communications

with defense counsel about its intention to file a superseding indictment if Hurtado refused to plead guilty to the original indictment; (4) what Hurtado was told about the Government's threat to file a superseding indictment; (5) when and how Seidler learned that Guttlein had failed to tell Hurtado about the Government's threat; and (6) the timing and content of any communications by Seidler to the District Court about Guttlein's alleged failure. In the absence of a more developed record, we cannot proceed to decide whether Guttlein provided Hurtado with ineffective assistance of counsel, nor whether the claim has been waived. Accordingly, we exercise our discretion to remand to the District Court for additional fact-finding. *See United States v. Leone*, 215 F.3d 253, 256–57 (2d Cir.2000). We retain jurisdiction to consider Hurtado's claim of ineffective assistance of counsel once the record has been supplemented. *See United States v. Jacobson*, 15 F.3d 19, 21–22 (2d Cir. 1994).**

Lastly, Hurtado argues that the District Court erred in refusing to depart downwardly from the applicable sentencing guideline range on the basis of her family circumstances and health. However, "[i]t is well established in this Circuit that a court's decision not to depart from the [United States Sentencing] Guidelines is normally not appealable." *United States v. Lainez–Leiva*, 129 F.3d 89, 93 (2d Cir. 1997) (citation omitted). None of the exceptions to this rule are present here. *See id.* (explaining that a decision not to depart downward is reviewable only if a violation of law occurred, the Guidelines were mis-

applied, or the refusal to grant the departure was based on the District Court's mistaken belief that it lacked authority to depart). Therefore, we must decline to review the District Court's decision not to grant a downward departure at sentencing.

For the reasons stated, we AFFIRM IN PART and REMAND IN PART.

** At oral argument, Seidler represented that, just prior to his substitution as defense counsel, he had negotiated a plea agreement with the Government that Hurtado had agreed to accept. Hurtado communicated to Seidler, however, that Guttlein had told Hurtado that he could secure dismissal of the charges against her. Hurtado again retained Seidler shortly after the Government filed the superseding indictment, which added three new counts. We leave it to the District Court to determine if substitute counsel for Seidler will be necessary in the event he is a witness with respect to Hurtado's claim of ineffective assistance of counsel.